## SHEA v. THE CITY OF MUNCIE.

[No. 18,008. Filed Feb. 23, 1897. Rehearing denied May 20, 1897.]

APPEAL AND ERROR.—*Bill of Exceptions.—Evidence.*—Where the longhand manuscript, purporting to contain all the evidence, is followed by the shorthand reporter's certificate, the instructions, and the judge's certificate, it sufficiently appears that the bill of exceptions contains all of the evidence. *p. 19.*

INTOXICATING LIQUORS.—*Ordinance Restricting Sale to Business Portion of City.*—An ordinance prohibiting the sale of intoxicating liquor in the residence portion of a city, and confining the sale

Shea *v.* The City of Muncie.

thereof to the "business portion" of such city, under clause 13 of section 3608, Thornton's R. S, 1897, is not void for indefiniteness because the boundaries of the residence and business portions are not set forth therein.  *p. 20.*

STATUTORY CONSTRUCTION.—*Acts Passed at the Same Session of Legislature.*—Where two statutes are enacted at the same session of the legislature they should be construed together, if possible ; but, if they be irreconcilable, the later supersedes the earlier. *p. 21.*

INTOXICATING LIQUORS.—"*Moore Law," Not Local and Special Legislation.*—The act of March 9, 1895, known as the "Moore Law," amending clause 13 of section 3106, R. S. 1881, authorizing cities to pass ordinances prohibiting the sale of intoxicating liquors in the residence portion thereof, and confining the sale to the business portion, is not unconstitutional as being local and special legislation within the meaning of section 22, article 4, of the constitution. *pp. 21–25.*

SAME.—*Acts of March 9 and March 11, 1895, Not Repugnant.*—No such irreconciliable repugnance exists between the act of March 9, 1895, amending section 3106, R. S. 1881, authorizing cities to license, regulate and restrain the places where intoxicating liquors are kept for sale, and the act of March 11, 1895, which is a general act to better regulate and restrict the sale of intoxicating liquors, as to make the latter operate as an implied repeal of the former. *pp. 21, 22.*

MUNICIPAL CORPORATION.—*Validity of Ordinance.*—The question whether an ordinance is reasonable cannot be raised to affect its validity, where the power to enact the particular ordinance is specifically conferred upon the municipal corporation. *pp. 22, 23.*

INTOXICATING LIQUORS.—"*Moore Law."—Title of the Act Sufficiently Comprehensive.*—The fact that the title of the act of March 9, 1895, fails to mention the subject of prohibiting sales in the residence portion of cities does not render the act unconstitutional under section 19, article 4, of the constitution, as it is not prohibition, but regulation of the traffic that the act provides for. *p. 26.*

SAME.—*County License.—Evidence.*—A license to sell intoxicating liquors issued by the board of county commissioners does not exempt the licensee from compliance with any lawful regulation by a city touching such sales conducted within the corporate limits thereof; and in a prosecution for a violation of an ordinance prohibiting the traffic in the residence portion of the city, the county license is not admissible as evidence. *pp. 26, 27.*

SAME.—*Violation of Ordinance Restricting Sale to Residence Portion of City.—Former License as Defense.*—An ordinance prohibiting the sale of intoxicating liquors in the residence portion of a city, and providing that licenses previously issued shall be no defense to an action founded on the ordinance, is valid, and such license is

Shea *v.* The City of Muncie.

not admissible as evidence in defense in a prosecution for a violation of the ordinance. *pp. 27–31.*

SAME.—*Violation of Ordinance Restricting Sale.—Retention of Former License Fees.—Estoppel.*—Where an ordinance prohibits the sale of intoxicating liquors in the residence portion of a city, and provides that licenses previously issued shall be no defense in an action founded on the ordinance, the payment of the license fee to, and the retention thereof by the city do not estop the city from the enforcement of the ordinance. *p. 32.*

MUNICIPAL CORPORATION.—*Ordinance, Failure to Record and Sign.—Statute Construed.*—Section 3534, Burns' R. S. 1894, providing that ordinances shall, within a reasonable time after their passage, be recorded, and shall be signed by the presiding officer of the city, and attested by the clerk, is directory merely, and a failure to record and sign the ordinance for some months after its passage does not affect its validity. *pp. 32, 33.*

SAME.—*Ordinance.—Action for Violation of, a Civil Suit.—Evidence.*—In a civil suit by a city for the violation of an ordinance, it is not essential to recovery by the city to prove a sale to both persons named in the complaint, proof of sale to one is sufficient. *p. 33.*

INTOXICATING LIQUORS.— *Construction of Act of March 9, 1895.—* "*Residence Portion of City.*"—The "residence portion of a city," within the meaning of clause 13 of section 3608, Thornton's R. S. 1897, does not necessarily mean a portion of the city given up exclusively to family residences. *pp. 34, 35.*

INSTRUCTIONS.—*Naming of Circumstances to Be Considered.*—An instruction that the jury may consider certain enumerated circumstances which were proper for their consideration, but which does not tell them that they were bound to consider them, does not invade the province of the jury. *p. 36.*

APPEAL.—*Assignment of Error.*—An objection to the introduction of evidence, not made a ground for a new trial, will not be considered on appeal. *p. 36.*

EVIDENCE.—*Whether or Not a Building Is Within the Corporate Limits of a City, a Question of Fact.*—A question propounded to a witness as to whether or not a saloon building is within the corporate limits of a city is not objectionable as calling for a conclusion. *p. 37.*

APPEAL AND ERROR.—*Weight of Evidence.*—The Supreme Court will not weigh conflicting evidence to determine where the preponderance lies. *p. 38.*

From the Delaware Circuit Court.    *Affirmed.*

*Gregory, Silverburg & Lotz, W. L. Ball* and *J. G. Leffler,* for appellant.

*Warner & Brady,* for appellee.

McCABE, J.—The appellee sued the appellant before the mayor of the city of Muncie to recover the penalty provided for the violation of a certain ordinance of said city with which appellant was charged in the complaint.

The plaintiff recovered judgment before the mayor, and the defendant appealed to the circuit court, where another trial resulted in a verdict and judgment of one dollar against the defendant over his motion for a new trial. The circuit court also overruled a demurrer for want of sufficient facts to the complaint, and overruled a motion in arrest of judgment by the appellant.

The errors assigned call in question the above-named rulings.

The ordinance, with a violation of which the complaint charges the appellant, reads as follows:

"Sec. 1. Be it ordained by the common council of the city of Muncie that it shall be unlawful for any person or persons to sell any intoxicating liquors to be used in and upon the premises in the residence portions of the said city of Muncie, but all such sales shall be excluded from such portions of such city, and all places where such sales may be made shall be confined to the business portion thereof.

"Sec. 2. This ordinance shall apply to all sales within the said residence portions of said city whether the seller or sellers, or either of them, has taken out a license from said city or from Delaware county or the State of Indiana, and said license shall constitute no defense to any action founded on this ordinance.

VOL. 148—2

"Sec, 3. Any person or persons violating any pro-vision or provisions of this ordinance shall, on convic-tion, be fined in any sum not exceeding one hundred dollars.

"Sec. 4. This ordinance shall be in force and effect from and after its passage and publication for two weeks in the Muncie Daily Times.

"Passed August 26, 1895.

GEORGE W. CROMER, Mayor.

"Attest: F. A. ELROD, Clerk."

The complaint, in substance, charged the appellant with having, on the 24th day of January, 1896, at said city and Delaware county, Indiana, unlawfully vio-lated said ordinance, giving the number of the sec-tions charged to have been violated, with the date of its adoption, by then and there selling to John Max and David Spangler, at and for the price of ten cents, in and upon certain premises particularly described, within the residence portion of said city, and not within the business portion thereof, certain intoxica-ting liquor, to-wit, beer to be used and drunk in and upon said premises. But the complaint did not set out a copy of the ordinance as it only need recite the num-ber of section or sections charged to have been vio-lated, with the date of its adoption. Section 3501, Burns' R. S. 1894 (3066, R. S. 1881); *City of Hunting-ton* v. *Pease*, 56 Ind. 305.

It is contended by the appellee that, inasmuch as the ordinance does not appear in the complaint, that its validity cannot be presented by the demurrer to the complaint. There is no other objection to the complaint pointed out in the appellant's brief. But as the validity of such ordinance is conceded by the appellee to be necessarily involved by the evidence on the motion for a new trial, we will proceed to deter-mine its validity without deciding whether the ques-

tion of its validity was raised by the demurrer or not. Indeed, that question, once settled, is decisive of about every question presented on this appeal.

But, preliminary to that question, we are confronted by another question raised by the appellee's counsel. They contend that the evidence is not in the record, because there is no certificate by the trial judge that the bill of exceptions contains all the evidence. The longhand manuscript purported to contain the evidence, and immediately following such evidence is the statement that "this was all the evidence given in the cause," and then follows the shorthand reporter's certificate, and then follows what purports to be instructions, and then the judge's certificate and signature. The case of *Rosenbower* v. *Schuetz,* 141 Ind 44, cited by appellee's counsel in support of their contention, was a case where the only statement that the bill contained all the evidence was in the reporter's certificate. But the case of *McCormick* v. *Gray,* 114 Ind. 340, was just such a case as this, as to the point now in question, and adhering to that case, we hold that it sufficiently appears that the bill contained all the evidence. The objection to the oath administered to the stenographer, as to whether it was to him, as official reporter, or to truly report that case, is without substantial merit.

It is conceded by appellant's learned counsel that if the legislature could delegate authority and power to the city to pass or enact such an ordinance, that it has done so by an act approved March 9, 1895, to amend section 3106, R. S. 1881, providing for the incorporation of cities and prescribing their powers in the following language: *"Thirteenth.* To license, regulate, and restrain all shops, inns, taverns, or other places where intoxicating liquors are kept for sale, to be used in and upon the premises, and in regulating, restrain-

ing, and licensing such inns, taverns, shops, or places aforesaid, they shall have the power to designate the room, building or structure where such liquors may be sold, and may exclude such sales from the suburban or residence portion of such city, and confine the places where such sales may be made, to the business portion of such city, and may direct the arrangement and construction of the doors, windows, and openings of the particular room in such building where such sales may be had, or such intoxicating liquors be drunk." Acts of 1895, p. 182.

The first objecton to the ordinance is, that it is too uncertain and indefinite as to the boundaries of the localities designated "business portion" and "residence portion" of said city. It will be observed that the ordinance is as definite and certain as the statute.

It is not insisted that the statute is void or inoperative for uncertainty or indefiniteness, and we do not think it is. But it is strenuously insisted that the ordinance is void for such uncertainty. It is insisted that the ordinance, or some ordinance, should have first defined and prescribed the boundaries of the residence portion of said city. We do not decide that that might not have been properly done. The only difference between that course and the course pursued is, that the question of fact involved as to the true boundaries of such residence portion of said city was left to be determined in a court of justice, where the parties interested pro and con could be heard by testimony instead of the legislative department of the city hearing the evidence where no parties could have been heard to controvert the facts before the common council.

"An ordinance is not void for want of clearness of expression or on account of a difficulty in construing or applying its provisions." Horr & Bemis Munic.

Ordinances, section 193.   To the same effect is *Nealis* v. *Hayward*, 48 Ind. 19.

"An ordinance is sufficient which follows the words of an express power; for instance, under a power to license the sale of 'small ware,' an ordinance forbidding the sale of 'small ware' on the streets, and not defining what constitutes 'small ware' is definite enough."   Horr & Bemis Munic. Ordinances, section 78.

The next objection to the statute in question is, that it was repealed by implication in the act known as the "Nicholson Law," approved March 11, 1895, being an act to better regulate and restrict the sale of intoxicating liquors.  The repeal of statutes by implication is not favored by the law, and where two statutes are enacted, as in this case, at the same session of the legislature, they should be construed together, if possible, but if they be irreconciliable, the later supersedes the earlier.  *Wright* v. *Board, etc.*, 82 Ind. 335.  And where two statutes may well stand together it is the duty of the courts to construe them *in pari materia.*  *City of Madison* v. *Smith*, 83 Ind. 502; *Jeffersonville, etc., R. R. Co.* v. *Dunlap*, 112 Ind. 93; *Robinson* v. *Rippey*, 111 Ind. 112.  Repeal by implication occurs only where there is an irreconciliable repugnancy between two statutes. *Carver* v. *Smith*, 90 Ind. 222.

No irreconciliable repugnance between the two statutes has been pointed out to us, nor have we been able to discover any.

It is next urged that the legislature, in the passage of the so-called "Nicholson Law," approved March 11, 1895, have recognized the fact that the subject-matter embraced in that act could be embraced in a general law, and be made applicable to all the people and all the territory of the State of Indiana.

And counsel contend that though the subject of

both acts does not fall under section 22, article 4, of the state constitution, absolutely prohibiting local or special legislation on the subjects therein specified, yet that the act of the legislature in enacting the last of said two acts proves that the subject of both acts, being, as is claimed, one and the same, is one where a general law can be made applicable, and hence the later of the two acts, being local, violates section 23 of said article. This is what might be called a far-fetched argument.

We do not agree with the assumption of counsel that the two acts are upon one and the same subject, even if that would enable us to say that the subject of the last was one upon which a general law could be made applicable, and hence a violation of said section 23.

It is insisted that the act is local because it authorizes the passage of an ordinance prohibiting the sale of intoxicating liquors in the residence portion of the city of Muncie, while the business portions of said city may enjoy the blessings of the traffic as to them may seem good.

If this act be unconstitutional for the reason urged, all our legislation for the incorporation of cities and towns since the adoption of the present constitution has been unconstitutional and void, for it contemplated and authorized the adoption and enforcement of ordinances and by-laws within each municipal corporation of both town and city, which were not operative outside of the particular corporation where adopted; and not even operative alike in all portions of the municipality. Such legislation has been upheld and recognized as constitutional ever since the adoption of the present constitution.

Another objection to the ordinance is, that it is unreasonable. But where, as here, the power to enact

the particular ordinance is specifically conferred on the municipality, the question whether it is reasonable can no more be raised so as to affect its validity than could the same objection be raised against the statute so as to affect its validity, and that is not a valid objection to a statute. *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426; *Champer* v. *City of Greencastle*, 138 Ind. 339, and authorities there cited; *Rund* v. *Town of Fowler*, 142 Ind. 214; *Beiling* v, *City of Evansville*, 144 Ind. 644; Dillon's Munic. Corp. (4th ed.), sections 328, 319 , note 2; *Skaggs* v. *City of Martinsville*, 140 Ind. 476; 17 Am. and Eng. Ency of Law 247; *Pittsburgh, etc., R. W. Co.* v. *Town of Crown Point*, 146 Ind. 421; *City of Shelbyville* v. *Cleveland, etc., R. W. Co.*, 146 Ind. 66.

A large part of appellant's assault upon the statute and the ordinance, scattered all through their eighty-four-page printed brief, is the contention that both the statute and the ordinance amount to local prohibition of the sale of intoxicating liquors, or rather the prohibition thereof in certain localities of the State.

Now the sale of intoxicating liquors by the drink is recognized by our laws as a lawful business. *Champer City of Greencastle, supra,* and authorities there cited. And no one denies that the legislature possesses the power to regulate such business, and to delegate power to municipal corporations to regulate such business. The power to regulate a business, trade, etc., authorizes the municipality to confine the exercise of such business to certain localities, to certain hours of the day, etc. 20 Am. and Eng. Ency, of Law, 723. "It is held that the power of regulating slaughter-houses implies power to fix their location, to direct the manner of their use, and to prohibit their continuance whenever necessary to the welfare of the community. The only thing that the power recognizes as

unavoidable is their right to exist, but the corporation may say how, when, and where. Under a power to regulate certain trades or occupations their exercise may be restricted to certain places, and restrictions may be laid on the manner of conducting them." Horr & Bemis Munic. Ordinances, section 30.

This principle was applied and upheld in the case of *In re Wilson*, 32 Minn. 145, 19 N. W. 723, very much like the present case, in the use of the following language: "We have no doubt whatever of the power of the city council to determine where, and within what portions of the city, the business of selling and dealing in intoxicating liquors may be carried on. This right is implied and included in the power to *regulate*. And if they deem that the good order of the city requires that this traffic shall be excluded from the suburban and residence portions of the city, and confined to the more central and business portions, where it can be kept under more effectual police surveillance, their power to do so is, in our judgment, undoubted. Under a grant of police power to *regulate*, the right of the municipal authorities to determine where and within what limits a certain kind of business may be conducted, has often been sustained. For example, the place where markets might be held; where butchers' stalls or meat shops may be kept; where hay or other produce shall be weighed; where auctions may be held; the limits within which certain kinds of animals shall not be kept; within which the business of tallow chandler shall not be carried on; within which gunpowder shall not be stored; within which slaughter-houses shall not be kept; the distance from a church within which liquor shall not be sold. Such cases might be multiplied almost indefinitely. If, under the general police power to regulate, this can be done as to such kinds of business, on

what principle can it be claimed that similar regulations may not be adopted as to the sale of intoxicating liquors,—a traffic which all civilized communities deem necessary to place under special police regulations and restraints." To the same effect are *Portland* v. *Schmidt*, 13 Oregon 17, 6 Pac. 221; Black on Intoxicating Liquors, sections 227-234; 11 Am. and Eng. Ency. of Law, 606; *State* v. *Shroeder*, 51 Iowa 197, 1 N. W. 431; *DeBois* v. *State*, 34 Ark. 381; *State* v. *Rauscher*, 1 Lea (Tenn.) 96; *Commonwealth* v. *Jones*, 142 Mass. 573; *Mayor* v. *Shattuck*, 19 Col. 104, 34 Pac. 947; *People* v. *Cregier*, 138 Ill. 401, 28 N. E. 812.

This power is of the same nature of the power of a municipality to prevent the erection of wooden buildings within certain limits in a city. Such power has been upheld by this and other courts without question *(Clark* v. *City of South Bend*, 85 Ind. 276; *Baumgartner* v. *Hasty*, 100 Ind. 575; *Kaufman* v. *Stein*, 138 Ind. 49), and is similar to that to exclude slaughter-houses, tallow chandlers and other employments that are offensive to the sense of sight, hearing or smell from certain portions of the city.

While the legislative and judicial departments of the state government of Indiana have steadily recognized the business of selling intoxicating liquors by the drink as a lawful business for a half century, yet during the same period such departments have recognized that it was a dangerous business, dangerous to the peace and good order of society, requiring strict regulation and restraint.

But this court is wholly unable to see anything more sacred about the business, though it be a lawful one, than any other lawful business fraught with danger to the peace, safety, good order, health, comfort, or morals of the community. And therefore we

see no reason why that business may not be required to submit to the same kind of restraint and regulation that other lines of business of the character mentioned are constantly required to submit to.

Appellant's counsel next contend that the act violates section 19 of article 4, of the state constitution, requiring the subject of the act to be expressed in the title, in that the title fails to mention the subject of prohibiting sales in the residence portions of cities. It is not prohibition, but regulation of the traffic that the act provides for, and that was what the amended section provides for.    Black on Intoxicating Liquors, sections 227, 234.

It is practically conceded that the title is amply sufficient to cover the subject of the regulation of the traffic in cities.    Nor is there any question made but that that subject is mentioned in the title; and if the act embraces another distinct subject, that of prohibition, and not properly connected with the one subject of regulation, then the act would violate the section in embracing more than one subject, a thing appellant's counsel lay no claim to.    Nor is there anything in the contention that the act violates section 23 of article 1, of the constitution, providing that: "The general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The next point made is, that the trial court refused to allow appellant to read in evidence his license, issued to him by the board of commissioners.

The statute provides that a city may require and exact a license to retail intoxicating liquors within its corporate limits of one who has already received a license from the board of commissioners of the county so to sell by the drink.    Section 7282, Burns' R. S.

1894 (5317, R. S. 1881); *Bush* v. *City of Indianapolis,* 120 Ind. 476; *Wiley* v. *Owens,* 39 Ind. 429; *Sweet* v. *City of Wabash,* 41 Ind. 7; *Emerich* v. *City of Indianapolis,* 118 Ind. 279.

This clearly shows the legislative intent in author- izing the licensing of one by the board of commis- sioners to sell intoxicants by the drink was not to make such license an exemption from compliance with any lawful regulation by the municipality touch- ing such sales conducted within the corporate limits of such municipality. Therefore the county license was no defense, and was properly excluded.

But the appellant offered in evidence a license is- sued by the clerk of the city, appellee, for which he had paid to said clerk $250.00, pursuant to another or- dinance requiring such payment from persons selling intoxicants by the drink within the corporate limits of said city. This is urged, with much warmth and vigor by appellant's counsel, as palpable error. And, on the other side, it is contended with equal earnest- ness that it was not. If the whole ordinance is valid, that is the part providing that such licenses shall be no defense to an action founded on the ordinance as well as the other part, then there was no error.

The character of the power here involved falls with- in the domain of what is known as the police power. That power resides in the State, and by the act we have been considering, the legislature delegated such police power to the city. And, as was said in *Cleve- land, etc., R. W. Co.* v. *Harrington,* 131 Ind., at page 436: "The State could not deprive itself of the right to exercise the police power by granting to appellant the right to regulate the speed of trains. * * * The police power of a state cannot be alienated even by an express grant upon a valuable consideration.

Cooley Constitutional Limitations, 340; *Thorpe* v. *Rutland, etc., R. R. Co.,* 27 Vt. 140.

"The ordinance now under consideration is a police regulation, authorized by an act of the legislature, designed to protect the people of the city of Indianapolis against the dangers incident to the rapid movement of engines and trains through thickly populated localities, and is binding upon the appellant as well as other railroad companies which have tracks within the corporate limits of the city."

The city then may exercise the police power thus delegated, precisely as the State might have done before it was delegated to the city.

In *State* v. *Woodward,* 89 Ind., at page 114, speaking of the right previously granted to the Vincennes University to sell lottery tickets, and borrowing from the language of the Supreme Court of the United States, this court said: "Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people, in their sovereign capacity, and through their properly constituted agencies, may resume it at any time when the public good shall require, whether it be paid for or not. All that one can get by such a charter is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has in legal effect nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the state. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

Applying this principle to the regulation of the liquor traffic, this court, in *McKinney* v. *Town of Salem,* 77 Ind., at page 214, said: "The granting of a license is not the execution of a contract, and the counsel for

appellants are in error in assuming, as they do, that a license issued pursuant to a general law of the state is a contract. The enactment of a law regulating the liquor traffic is an exercise of the police power of the state. The police power is a governmental one, and permits obtained under laws enacted in its exercise are not contracts. In enacting laws for the regulation of the business of retailing liquors, a sovereign power is asserted, and its exercise does not confer upon any officer authority to make a contract which will abridge or limit this great and important attribute of sovereignty. Sovereigns may make contracts which, under our constitution, will preclude them from impairing vested rights by subsequent legislation, but this result never follows the exercise of a purely police power. The right to legislate for the promotion and security of the public safety, morals and welfare, cannot be surrendered or bartered away by the legislature. *Stone* v. *Mississippi*, 101 U. S. 814; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Patterson* v. *Kentucky*, 97 U. S. 501; *Boyd* v. *Alabama*, 94 U. S. 645; *Freleigh* v. *State*, 8 Mo. 606; *Metropolitan Board, etc.*, v. *Barrie*, 34 N. Y. 657; *Commonwealth* v. *Brennan*, 103 Mass. 70; *Fell* v. *State*, 42 Md. 71. A license to retail liquor is nothing more than a mere permit; it is neither a contract nor a grant. The person who receives it takes it with the tacit condition and the full knowledge that the matter is at all times within the control of the sovereign power of the State."

And in this case, that power having been delegated to the city by the legislature of the State, the city can exercise the same power that the State could before it delegated the power. As was said in *Haggart* v. *Stehlin*, 137 Ind., at page 54: "Nothwithstanding his payment of large sums of money for license fees

both to the county and the city, his license could be revoked without refunding his money."

In *Moore* v. *City of Indianapolis*, 120 Ind. 483, a case involving the right of the city to practically nullify the license it had granted by passing an ordinance prohibiting the traffic without the payment of a larger license fee than that paid by the appellant in that case, this court, at page, 489, said: "It is next contended that the municipal authorities had no power, under the statute in question, to enact an ordinance increasing the amount of the license fee, and make it applicable to unexpired licenses, thereby practically annulling permits issued by the city. While conceding that a license is not an absolute contract in which the licensee obtains a vested right, during the full period for which it was granted, to sell upon the same terms as when the license was issued, it is contended that it is, nevertheless, in some sense, a contract between the city and the licensee, under which the latter acquires an absolute right to sell liquors during the term, subject to municipal regulation, without being required to pay any enhanced price, simply for the purpose of increasing the city revenue. Moreover, it is contended that a license to retail intoxicating liquors is a thing of value, in the nature of property. and that, even if the legislature had the power to annul existing licenses, or authorize it to be done, good faith required that the money paid for the unearned portion be refunded. * * * It is sufficient to say that principles as firmly settled as anything can be, upon the highest judicial authority, sweep away every vestige of the foundation upon which the argument against the validity of the ordinance rests. When it is conceded, as it is, and must be, that a law regulating, or authorizing municipal corporations to regulate, and impose restrictions upon, the sale of in-

toxicating liquors, is an exercise of the police powers of the State, then it follows inevitably that neither the State nor the municipality can, by any sort of contract, license, or permit, abdicate, embarrass or bargain away its right to exercise this power in such a manner as it may thereafter deem the public welfare requires. It is the peculiar province of the State, either by legislative enactment or through authority delegated to municipalities, to exert its police power for the protection of the lives, health, and property of its citizens, as well as to maintain good order and preserve public morals. It is everywhere conceded that the traffic in intoxicating liquors affects all these subjects, and that it is, hence, a proper subject for police regulation.

"It is essential, therefore, that the power to regulate should be a continuing one, ever present and available, to be exercised by the state as emergencies may require. Hence, the rule that neither the state, nor any of its agencies to whom the power has been delegated, can divest itself of the right to impose such other or additional restrictions upon the sale of intoxicating liquors, as the maintenance of good order or the preservation of the public morals may seem to require. Cooley Const. Lim. (5th ed.), p. 343." To the same effect is *State* v. *Bonnell*, 119 Ind. 498.

Therefore, the trial court did not err in refusing to permit the license issued by the city clerk to appellant to be read in evidence, and did not err in refusing to admit the testimony of Elrod, the city clerk of appellant, that he demanded and received from appellant $250.00 for the permit or license so issued to appellant for the privilege of selling intoxicants in said city for one year. And for the same reason the trial court did not err in refusing to allow appellant to read in evidence the ordinance by which the said clerk was au-

thorized to demand and receive said sum of $250.00 for said permit to sell, etc.

And the same principles justify the court's refusal to admit appellant's offered evidence that neither the $100.00 fee for the county license nor the $250.00 for the city license had been paid or tendered back to appellant.

Nor the does the payment of the license fee to and retention thereof by the city create an estoppel against the city to enforce the ordinance against selling in the residence portion of the city, as is contended by appellant's counsel, both because of the principles of law above announced, and because the appellant must be held to know the law, and to have known when he sought the permit, and when he paid his money, that the city could lawfully withdraw the permit at any time, and that the city could not barter away its power to do so.

Therefore, there is no element of estoppel about it. The facts and circumstances as to the legal effect of the transaction were equally known to both parties. In such a case there can be no estoppel. *Fletcher* v. *Holmes*, 25 Ind. 458; *McGirr* v. *Sell*, 60 Ind. 249; *Long* v. *Anderson*, 62 Ind. 537; *Lash* v. *Rendell*, 72 Ind. 475; *Hosford* v. *Johnson*, 74 Ind. 479; *First Nat'l Bank* v. *Williams*, 126 Ind. 423; *Watts* v. *Julian*, 122 Ind. 124; *Roberts* v. *Abbott*, 127 Ind. 83; *Wolfe* v. *Town of Sullivan*, 133 Ind. 331; *Wolf* v. *Zimmerman*, 127 Ind. 486; *Platter* v. *Board, etc.*, 103 Ind. 360; *State* v. *Gerhardt*, 145 Ind. 439.

The next point made by appellant is, that the ordinance in question is void because the evidence shows that it was not recorded and not signed by the mayor and attested by the clerk within a reasonable time after its passage. The statute on the subject provides that: "All by-laws and ordinances shall, within a

reasonable time after their passage, be recorded in a book kept for that purpose, and shall be signed by the presiding officer of the city, and attested by the clerk." Section 3534, Burns' R. S. 1894. The evidence shows that the ordinance was not recorded, signed or attested by the clerk until some months after its passage, or about a month or so prior to April 20, 1896, the day of trial. We need not decide whether the ordinance was signed by the mayor, attested by the clerk, and recorded within a reasonable time or not, as it has been settled by this court that the provision quoted is directory merely, and that a failure to sign the ordinance does not invalidate it. *Martindale* v. *Palmer*, 52 Ind. 411-414; 17 Am. and Eng. Ency. of Law, 240-243, and authorities there cited; Horr & Bemis Munic. Ord., section 49; Tiedeman Munic. Ord., section 148. There was no controversy but that the ordinance was validly passed, and afterwards, and before the trial, recorded, signed and attested. The delay in recording, signing, and attesting did not affect the validity of the ordinance.

The next complaint is of the instructions given and refused by the trial court. The complaint charged that the sale of the intoxicating liquors complained of was made to David Spangler and John W. Max. The evidence showed that only one of them took beer, and the other took a cigar. The court instructed the jury that if one of them bought beer and drank it, that was sufficient, the other facts alleged being proven, to warrant a finding against the appellant, and refused to instruct, as requested by appellant, to the effect that the evidence must, in order to warrant a finding against the appellant, show a sale to both.

A prosecution for the violation of a city ordinance is a civil suit. *Common Council* v. *Fairchild*, 1 Ind. 315;

*Board, etc., v. Chissom,* 7 Ind. 688; *City of Greensburg v. Corwin,* 58 Ind. 518.

And in a civil suit it is only necessary to prove the substance of the issue in order to recover, that is, it is only necessary to prove so much of the complaint, or so many of the facts alleged therein as constitute a cause of action. It is not necessary to prove them all. *Long* v. *Doxey,* 50 Ind. 385; *Terre Haute, etc., R. R. Co.* v. *McCorkle,* 140 Ind. 613. The trial court, therefore, did not err in the giving and refusal of the instructions mentioned.

Appellant complains of an instruction refused which in effect told the jury that if appellant's saloon where he sold the liquor in question was in a part of the city not given up exclusively to family residences, and was given up to any commercial business, then such sale was not in the residence portion of the city, and the sale was not a violation of the ordinance.

Such an instruction is so clearly wrong that little need be said to demonstrate it. If that instruction be correct, then the ordinance and all ordinances enacted pursuant to the enabling act of the legislature must be self-destructive or inoperative, because, as soon as a saloon opens in the residence portion of a city, that portion of the city immediately ceases to be the residence portion of the city, because thereafter it is not exclusively given up to family residences.

Instruction number ten, given by the court, is also complained of. It told the jury that "if a certain part of the city, large or small, is principally and chiefly used for residence purposes, families residing and having their homes therein, such part of the city would not become a business portion of the city merely because a grocery or other business was here and there carried on therein. The decided preponderance of residences and families residing therein determines the character of said portion of the city."

Shea *v*. The City of Muncie.

If that is not a correct statement of the law upon the subject, then it seems to us that there is no fair way of determining what is meant in the statute, and the ordinance authorized thereby, in the use of the words "residence portion of such city." Does one family grocery in the residence portion of a city convert that portion into what the statute means by the words "the business portion of such city?" And does one family residence in the business portion of a city convert that part thereof into a residence portion of such city? Most certainly not. Because if both of these questions may be answered in the affirmative, then it will appear that in very rare instances will any city have either a business portion or a residence portion thereof. In other words, all parts of all cities will be residence portion, and the same parts will be business portions thereof. This makes nonsense out of the language of the statute and the ordinance. The framers of the statute and of the ordinance must have had in mind the common understanding of the import of the words or phrases used in "business portion" and "residence portion" of a city. And that idea was correctly enough expressed in the instruction so that the jury could apprehend it. Complaint is made of instruction No. 11 given by the court as follows:

"A family residing in a dwelling house as a family residence, may furnish board and lodging to boarders who may occupy with the family a part of such residence, and such use for a dwelling house will not change the character of such dwelling from a residence to a business house." Webster's definition of the word "business" is "constant employment; regular occupation; as the business of life; business before pleasure."

In view of the general scope and intent of the statute and ordinance, we think the court did not err in

telling the jury that keeping boarders in one's residence or dwelling house does not convert the same into a business house.

In the sixth instruction given by the court, the jury were told that in determining the question whether the appellant sold the liquor to be used upon the premises, they might consider the quantity sold, the manner of its delivery, the vessel used, if any, to deliver it, and whether the same was drunk upon the premises in the presence of the defendant without objection upon his part, together with all other circumstances bearing upon the question. Counsel concede that the court could lawfully tell the jury that in determining the question they might take into consideration all the attending circumstances, but that it was error to name the circumstances that they might consider.

There is nothing in the objection. So long as the circumstances named were such as the jury might consider, and counsel do not deny that they were, and so long as the court did not tell the jury that they were bound to consider them, and each one of them, the court did not invade the province of the jury. *Rater* v. *State*, 49 Ind. 507.

The next point made in appellant's brief for a reversal is that the trial court erred in overruling appellant's objection to the introduction in evidence by the appellee of a prepared map, illustrating the portion of the city where appellant's saloon was situated as to residences and business in that locality. The objection was that there was no sufficient evidence that the map was correct. Though in his motion for a new trial appellant assigned thirty-nine causes therefor, he failed to assign this as one of them, as we may presume, because he thought he had enough without it. So if there was anything in the objection which we need not and do not decide, he has waived it by failing

to make it one of the grounds of his motion for a new trial.

The witness, True, was asked whether the location of appellant's saloon was within the corporate limits of the city of Muncie, to which he answered, over appellant's objection, that it was. The objection was that it asks the witness for an opinion, a judgment, and not a statement of any fact. It is settled law in this State that it is a question of fact, whether or not a particular locality is within the limits of a city. *Grusenmeyer* v. *City of Logansport*, 76 Ind. 549–552; *City of Indianapolis* v. *McAvoy*, 86 Ind. 587–589; *Strosser* v. *City of Fort Wayne*, 100 Ind. 443–447.

There are other instructions, the giving of which on the one hand, and the refusal of others on the other, have been presented by the record and appellant's brief, likewise the admission and rejection of evidence, to all of which rulings exceptions were taken by appellant. But the points already decided as to the validity of the ordinance, instructions, and admissibility of evidence are decisive in favor of appellee of all the other rulings, exceptions on instructions, admission and rejection of evidence not already set forth above.

The appellant also complains that the evidence is not sufficient to support the verdict.

We find that part of the evidence which tends to support the verdict amply sufficient. And under such circumstances it makes no difference how strong the opposing evidence may seem to us to be, we cannot weigh and determine where the preponderance thereof is.

A large amount of needless labor has been imposed on us in this case by the counsel on either side adopting a different order of presenting points relied on in their briefs. The appellant's brief, consisting of 84

large printed pages, was followed by the court in the order in which the points were presented. As each point was reached and considered, it was found that the appellee's brief presented the answer in a different order to that adopted by appellant, so that to get any benefit from appellee's brief, consisting of about 70 large printed pages, it was necessary to look over almost the whole of that brief once for every point decided. So that it became more difficult frequently to find what appellee had to say upon the point and its authorities than to go to the books and look them up ourselves.

Finding no available error in any of the points made for reversal, the judgment is affirmed.