## SMITH ET AL. *v.* CITY OF NEW ALBANY.

[No. 21,536.   Filed November 29, 1910.   Rehearing denied February 24, 1911.]

1. MUNICIPAL CORPORATIONS.—*Removing Dead Animals.—Ordinances.—Questioning Validity of.*—Where a municipal ordinance provides that the right to remove carcasses through the streets of the city shall be let by contract, a person to whom the carcass of a horse has been given by the owner acquires no such property right as permits him to question the constitutional validity of such ordinance. p. 284.

2. MUNICIPAL CORPORATIONS.—*Ordinances.—Removal of Dead Animals.—Ownership.*—Where the owner of a dead animal waives his rights thereto, the ownership of such animal vests in the person who by the city ordinance is granted the exclusive right of removal thereof. p. 285.

3. MUNICIPAL CORPORATIONS.—*Dead Animals.—Removal of.—Ordinances.*—Subject to certain rights of the owners, municipal corporations, in the exercise of the police power in the interest of health and the prevention of nuisances, have the right to confer upon certain individuals the exclusive right to remove dead animals. p. 287.

4. MUNICIPAL CORPORATIONS.—*Dead Animals.—Statutes.—Construction.*—Statutes giving cities the power to provide for the removal of dead animals, being in the furtherance of the public health, should be construed liberally so as most effectively to further such end. p. 288.

5. MUNICIPAL CORPORATIONS.—*Inherent Powers.—Removal of Dead Animals.*—Cities have the inherent and necessarily implied power to protect the health and lives of their citizens against dead animals, and this power may be delegated. p. 288.

6. MUNICIPAL CORPORATIONS.—*Nuisance.—Powers Concerning.*—Subdivision seven of §8655 Burns 1908, Acts 1905 p. 219, §53, providing that common councils of cities shall have the power "to declare what shall constitute a nuisance * * * and provide for the punishment of the person or persons causing or suffering" a nuisance to exist, confers express power to punish persons for creating or maintaining a nuisance; and subdivision 53, of such section, providing that common councils shall have power "to carry out the objects of the corporation, not hereinbefore particularly specified," gives to such councils all necessary powers not enumerated in such section. p. 289.

7. MUNICIPAL CORPORATIONS.—*Nuisance.—Ordinances Condemning.—Definitions.*—A municipal ordinance prohibiting nuisances is sufficient if it is drawn in the language of an express statute empowering the council to prohibit nuisances; and if such ordinance fails to define a nuisance the courts will look to the statutory definition thereof. pp. 289, 291.

8. MUNICIPAL CORPORATIONS.—*Discretion.—Nuisance.*—Under a statute giving city councils power to abate nuisances, they have a wide discretion in defining a nuisance, and their decision, in doubtful cases, is controlling, though councils can not by fiat lawfully declare that to be a nuisance which by nature is not a nuisance. p. 289.

9. MUNICIPAL CORPORATIONS.—*Removal of Dead Animals.—Ordinances.—Statutes.*—The municipal corporations act of 1905 (Acts 1905 p. 219) neither nullifies nor repeals a city ordinance, enacted under the provisions of the act of 1875 (Acts 1875 p. 28, §4195 Burns 1901), for letting contracts to remove dead animals, though subdivision 16 of §93 thereof (§8696 Burns 1908) gives to boards of public works the power "to remove all dead animals * * * either by contract or otherwise," and subdivision 7

of §53, thereof (§8655 Burns 1908) provides that the council shall have power "to declare what shall constitute a nuisance" and "to authorize the removal of the same by the proper officers," the repealing clause of such act (§9016 Burns 1908, Acts 1905 p. 219, §272) providing that "all former laws within the purview of this act except laws not inconsistent herewith and enacted at the present session of the General Assembly, are hereby repealed," since the saving clause (§8642 Burns 1908, Acts 1905 p. 219, §41) provides that "all by-laws, ordinances and regulations, not inconsistent with this act, shall remain in full force until altered or repealed by the common council of such city." p. 290.

10. MUNICIPAL CORPORATIONS.—*Ordinances.—Definiteness.—Removing Dead Animals.*—A municipal ordinance providing for "the removal of the carcasses of all dead animals" and that "only such carcasses are to be removed as may lawfully be removed, and disposed of by said city," is not void for indefiniteness, the words "dead animals" definitely importing such dead animals as in some way endanger the public health; and since there is a property right in dead animals, the ordinance should be construed so as to protect such right and to require the removal of such animals only when they are likely to become nuisances. p. 291.

11. MUNICIPAL CORPORATIONS.—*Exercise of Police Power.—Property Rights.*—Cities may exercise the police power though it result in the curtailment or sacrifice of property rights. p. 292.

12. PLEADING.—*Violating Ordinances.—Exceptions.—Complaint.*—A complaint for the violation of a city ordinance need not negative the exceptions therein contained, if an offense is defined regardless of such exceptions. p. 293.

13. MUNICIPAL CORPORATIONS.—*Removal of Dead Animals.—Ordinances.—Exceptions.—Complaint.*—A complaint against defendant for unlawfully removing a carcass over the streets of the plaintiff city without a right to do so is sufficient without alleging that another had such right of removal. p. 293.

14. MUNICIPAL CORPORATIONS.—*Ordinances.—Violation.—Civil Actions.*—A prosecution for the violation of a city ordinance constitutes a civil action. p. 293.

15. PLEADING.—*Complaint.—Justices of the Peace.*—A complaint before a justice of the peace is sufficient if it informs the defendant of the nature of the claim, and a judgment thereon may be used as a bar to another action for the same cause. p. 293.

16. PLEADING.—*Complaint.—Sufficiency of, to Bar Another Action.—Res Judicata.—Evidence.*—Whether a matter was litigated in a former action is determined by the pleadings in such action, but if the pleadings are so general that another cause might have been litigated, extrinsic evidence is admissible to determine what was actually litigated. p. 293.

17. PLEADING.—*Indefiniteness.—Motion to Make More Specific.— Demurrer.*—A motion to make more specific is the remedy for indefiniteness and uncertainty, but for an omission of an essential fact, a demurrer is the remedy.   p. 294.

18. MUNICIPAL CORPORATIONS.—*Removal of Dead Animals.—Ordinances.—Violations.—Complaint.*—Each separate removal of the carcass of a dead horse in violation of a city ordinance constitutes a separate cause of action, and if a complaint joins several causes therein, the defendant may require the separate paragraphs to set out definitely the different violations.   p. 294.

From Floyd Circuit Court; *W. C. Utz*, Judge.

Prosecution by the City of New Albany against Gus Smith and another. From a judgment for plaintiff, defendants appeal.  *Affirmed.*

*Alexander Dowling*, for appellants.

*George H. Hester* and *C. W. Schindler*, for appellee.

MYERS, C. J.—Appellants were charged, on May 14, 1907, in the city court of New Albany, by verified complaint, with the violation of a city ordinance, in that " on May 13, 1907, said defendants did, within the corporate limits of the city of New Albany, Indiana, unlawfully remove the carcass of a dead animal, to wit, a horse, from the city of New Albany, said Gus Smith and Rudolph Alles, nor either of them, then and there having a license or contract with said city for the removal of dead animals, and said city having theretofore entered into a contract with the firm of Parad & Buhler for the removal of carcasses of all dead animals, contrary to the provision of sections one, two and three of an ordinance of said city, in such cases made and provided, passed on November 5, 1883."

After a trial and conviction appellants appealed to the circuit court. There, a motion to dismiss the action for want of sufficient facts to constitute a cause of action was renewed and overruled, exception reserved, a trial had, a special finding of facts made, and conclusions of law stated, and over a motion for a new trial judgment was rendered against appellants.

The facts found were, in substance, as follows: On November 5, 1883, the common council of the city of New Albany passed an ordinance authorizing the mayor of the city to enter into a contract with some suitable and responsible person for the removal of the carcasses of all animals from the corporate limits of the city, and for the destruction of such carcasses. This ordinance provided that "only such carcasses are to be removed as may be lawfully removed and disposed of by the city or its officers." The person contracting to remove the bodies of the dead animals was to execute a bond in a penalty of $100, payable to the city, conditioned for the faithful performance of his contract, and for the protection of the city from loss, damage or expenses on account of the acts and proceedings of such contractor. The person so contracting was to have the exclusive right to remove all such carcasses from the city and dispose of them. Any person other than such contractor, his agents or servants, removing or attempting to remove the carcass of an animal was to forfeit to the city not less than $2 nor more than $10 for so removing or attempting to remove a carcass. If the contractor failed, neglected or refused for six hours after notice to remove any such carcass, then any other person might lawfully remove it. This ordinance was duly published, and remained in force thereafter until the time of the trial and special finding. On March 30, 1907, the firm of Parad & Buhler entered into a written contract with said city to remove the carcasses of all animals dying within the limits of the city of New Albany, of which the city authorities had control. The contractors were to pay the city $50 a year for a term of five years, as the consideration for the privilege granted. Certain other provisions required by the ordinance were set out in the agreement. This agreement was approved and ratified by the board of public works and the common council. The contractors filed their bond agreeably to the requirements of the ordinance and contract, and it was duly approved.

Parad & Buhler paid to the city the sum of $50, and thereafter were ready and willing to comply with the terms of their agreement, excepting as they were prevented from doing so by defendants. On May 13, 1907, defendants removed from the corporate limits of said city the carcass of a horse, and transported it through the streets of said city. The contractors, Parad & Buhler, had received no notice to remove said carcass. At the time of said removal by the defendants, they had no contract with said city to remove dead animals from the city limits, and through the streets of said city, or for the destruction or other disposition of such carcasses.

The sufficiency of the complaint is challenged on the following grounds: (1) The act of 1905 (Acts 1905 p. 219, §53, §8655 Burns 1908) repealed the act of 1875 (Acts 1875 p. 28, §4195 Burns 1901); (2) the provisions of the ordinance of 1883 are inconsistent with the act of 1905, *supra,* and are not within the saving clause (§8642 Burns 1908) of the latter act; (3) the ordinance of 1883 is unconstitutional, as being in violation of the 14th amendment to the federal Constitution, in that the carcass of an animal is property, and its owner cannot be deprived of its possession and control without his consent or due process of law, and that such ordinance is in violation of article 1, §21, of the state Constitution, in that no man's property shall be taken by law without just compensation; (4) the ordinance is invalid, because of its uncertainty, and (5) that the statements in the complaint are not sufficient to bar another action for the same cause.

Owing to the fact that the owner of the carcass is not here making any objection, we may eliminate the question as to the constitutionality of the statute, as appellants 1. are not in a situation to raise the question as to another's rights, when they themselves have no right of property. If the ordinance is valid as to them, they cannot complain that it may be invalid as to another on the constitutional grounds here urged. *Bedford Quarries Co.* v.

*Bough* (1907), 168 Ind. 671, 14 L. R. A. (N. S.) 418; *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300; *Currier* v. *Elliott* (1895), 141 Ind. 394; *Henderson* v. *State, ex rel.* (1894), 137 Ind. 552, 24 L. R. A. 469; *Wagner* v. *Town of Garrett* (1889), 118 Ind. 114.

If it be urged that appellants acquired a property right in the carcass by gift, because of the request, by the owner, that they remove it, the contention is properly answered that

2. they were bound by the ordinance as to the exclusive right of removal in another. Upon the waiver by the owner, the property right was by the ordinance vested in another. It appears from the evidence that the owner called the telephone exchange to give him the "dead animal man," without thinking of the city contractors, and without knowing who he was calling upon to remove the horse, though the city contractors seem also to have been called; but the horse was taken away before the contractor had time to reach it. Appellants had been unsuccessful bidders for the removal of dead animals at the time the contract was awarded to another, and had actual knowledge of the existence of the contract. They paid nothing for the horse. We do not think it possible for them to raise the question of the constitutionality of the ordinance in this action.

The act of 1875, *supra,* under which the ordinance was enacted, provided that " the common councils of cities, and the trustees of the incorporated towns of this State are empowered and authorized to pass by-laws to secure the removal of slops, garbage, the carcasses of dead animals, and other waste material from their corporate limits, and to appoint and contract for such removal, and provide that the person appointed, or contracted with, shall have the exclusive right to remove the same and to provide such penalties for the violation of by-laws, in accordance with the general laws for the incorporation of cities and towns, now in force, or which may hereafter be adopted." Subdivision seven of §8655, *supra,* in enumerating the powers of common councils,

authorizes them "to declare what shall constitute a nuisance, to prevent the same, require its abatement, authorize the removal of the same by the proper officers, and provide for the punishment of the person or persons causing or suffering the same," etc. By the fifty-third subdivision of §8655, *supra*, common councils are authorized "to carry out the objects of the corporation, not hereinbefore particularly specified," and under the same clause it is also provided that "whenever any executive or administrative function shall be required to be performed by any ordinance or resolution of the common council, the same shall be performed by the proper executive department, and not by such council."

Section 8696 Burns 1908, subd. 16, Acts 1905 p. 219, §93, in enumerating the powers of a board of public works, provides that such boards shall have power "to remove all dead animals, garbage, filth, ashes, dirt, rubbish or other offal from such city, either by contract or otherwise, and to erect crematories or other plants for the destruction and disposal thereof." The same act (§8655 Burns 1908, subds. 13, 14) grants to common councils the power to prevent the deposit of unwholesome substances upon private or public property, and to compel its removal to designated points, and to require slops, garbage, ashes and other waste material to be placed at designated points, convenient for removal, etc. Appellants' position is, that the act of 1905, *supra*, covers the whole subject-matter, and by necessary implication repeals the former statute; that the only provision in the new act in regard to the removal of the carcasses of animals confers the power upon boards of public works to cause the removal by contract or otherwise, and cannot be exercised concurrently by common councils; and that the saving clause (§8642, *supra*) does not save the ordinance for the reason that the act of 1905, *supra*, does not authorize common councils to pass ordinances respecting the removal of dead animals, and affix penalties for their violation. Appellee's

contention is that said act of 1905 makes no provision for the enactment by boards of works of penal ordinances, but only confers the power to remove or contract for the removal of dead animals, and that the inherent power in cities to punish for the unauthorized removal of dead animals, under subdivisions seven and thirteen of §8655, *supra*, is not interfered with, and is not inconsistent with the contractual power, and is specifically authorized under §§8644, 8965 Burns 1908, Acts 1905 p. 219, §§43, 270.

It is fairly settled, with some reservations as to rights of property in the owners of dead animals, that municipal corporations may confer upon individuals the ex-

3.  clusive right to remove such animals, as well as other offensive matter, upon the theory that in practical application the object can be accomplished better by those prepared to do the work; that it is within the discretion of the municipal authorities to contract for the accomplishment of the results under a general system; and that such legislation is reasonable in itself, and intended to preserve health and to create conditions least offensive to the senses. *Walker* v. *Jameson* (1895), 140 Ind. 591, 28 L. R. A. 679, 49 Am. St. 222, and cases cited; *Iler* v. *Ross* (1902), 64 Neb. 710, 90 N. W. 869, 57 L. R. A. 895, 9 Am. St. 676, and note; *Smiley* v. *MacDonald* (1894), 42 Neb. 5, 60 N. W. 355, 47 Am. St. 684, 27 L. R. A. 540, and notes; *Commonwealth* v. *Stodder* (1848), 2 Cush. 562, 48 Am. Dec. 679; *Zylstra* v. *Corporation of Charleston* (1794), 1 Bay (S. C.) 382; *City of Louisville* v. *Wible & Willinger* (1886), 84 Ky. 290, 1 S. W. 605; *Weil* v. *Record* (1873), 24 N. J. Eq. 169; *State* v. *Orr* (1896), 68 Conn. 101, 35 Atl. 770, 34 L. R. A. 279; *City of Richmond* v. *Caruthers* (1905), 103 Va. 774, 50 S. E. 265, 70 L. R. A. 1005; *River Rendering Co.* v. *Behr* (1879), 7 Mo. App. 345; *Meyer* v. *Jones* (1899), 49 S. W. (Ky.) 809; *Morgan & Co.* v. *City of Cincinnati* (1884), 12 Weekly Law Bul. 41.

Under this state of the law the question presents two distinct and independent branches. One is, that under the

act of 1905, *supra*, the sole power to enter into con-
4. tracts for removing dead animals resides in the execu-
tive and administrative branch of the municipality,
which has no power to enact penal ordinances, and that with
the restricted right of entering into a contract, or acting
directly, it cannot punish for an infraction of the contract,
though that infraction may affect the health, or be obnoxious
to the senses, and that unless the council has the power to
enact a punitive ordinance none can be enacted. It seems
clear that in so important a matter as one affecting
public health and public comfort, the city should not be
powerless to remedy the evils that might arise from dis-
regard of the contract by those who should take it upon
themselves to do so. If there is no punitive power over the
subject in the city, it is clear that relegating the contractor,
or city, to civil actions for damages for infractions of the
contract, or injunction to punish interference, would fall far
short of providing a remedy, the essential characteristic of
which should be the speedy removal of objectionable matter.
The statute should not be given such a construction, if it
can be avoided without violating the private rights of those
who may seek to question the power or the procedure.

It is an inherent power of cities to protect the health and
lives of their citizens, and is impliedly necessary for accom-
plishing the purposes of their organization. The
5. power and the ordinance should be construed with
reference to the object to be accomplished. This
power may be delegated by express statute or by inference.
*Miller* v. *Town of Syracuse* (1907), 168 Ind. 230, 120 Am. St.
366, 8 L. R. A. (N. S.) 471; *Boyce* v. *Tuhey* (1904), 163 Ind.
202; *Scott* v. *City of Laporte* (1904), 162 Ind. 34; *Pittsburgh,
etc., R. Co.* v. *Town of Crown Point* (1896), 146 Ind. 421, 35
L. R. A. 684; *Walker* v. *Jameson, supra; Champer* v. *City of
Greencastle* (1894), 138 Ind. 339, 24 L. R. A. 768, 46 Am. St.
390; *City of Crawfordsville* v. *Braden* (1892), 130 Ind. 149,
14 L. R. A. 268, 30 Am. St. 214; *Mayor, etc.*, v. *Gerspach*

(1881), 33 La. Ann. 1011; *Kennedy* v. *Phelps* (1855), 10 La. Ann. 227.

Subdivision seven of §8655, *supra*, heretofore quoted, confers express power to punish "the person or persons causing or suffering" a nuisance to exist, while sub-
6.  division fifty-three seems to embrace all the objects of incorporation not enumerated. It is not necessary that a nuisance be defined by the ordinance. The ordinance is sufficient if it follows the words of an express
7.  statute, or is of such nature and character as to be apparent that the condition denounced is injurious to health or offensive to the senses—which is the statutory definition of a nuisance. §291 Burns 1908, §289 R. S. 1881; *In re Harris* (1879), 44 U. C. Q. B. 641; *Miller* v. *Town of Syracuse, supra; Carthage* v. *Buckner* (1879), 4 Ill. App. 317.

"In doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances re-quiring judgment and discretion on the part of the
8.  town authorities in exercising their legislative func-tions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question." *Walker* v. *Jameson, supra.* See, also, *Carthage* v. *Buckner, supra; City of Ogdens-burgh* v. *Lyons* (1872), 7 Lans. 215.

In the case of *Harrison* v. *Mayor, etc.* (1843), 1 Gill (Md.) 264, it was said, under a statute vesting the city of Baltimore "with full power and authority to enact all ordinances necessary to preserve the health of the city, prevent and remove nuisances," that "the transfer of this statutory and essential power is given in terms as explicit and comprehensive as could have been used for such a purpose. To accomplish, within the specified territorial limits, the objects enumerated, the corporate authorities were clothed with all the legislative powers which the General Assembly could have exercised.

Of the degree of necessity for such municipal legislation, the mayor and city council of Baltimore were the exclusive judges. To their sound discretion was committed the selection of the means, and manner (contributing to the end) of exercising the powers, which they might deem requisite to the accomplishment of the objects of which they were made the guardians."

It is not to be understood, of course, that that which is not in and of itself, by reason of its nature, character, or the manner of its use, location or disposition, a nuisance, can be made so by the mere fiat of a city council; for unless the power is expressly conferred, or is essential to the accomplishment of the purposes of its creation or its continued existence, or the thing denounced is from its nature, character or use a nuisance, a city council has no power to declare it a nuisance. An ordinance defining a nuisance is the subject of review by the courts, both as to its reasonableness, and as to whether the thing inveighed against is in fact a nuisance. *Indianapolis Abattoir Co.* v. *Neidlinger* (1910), 174 Ind. 400; *City of Delphi* v. *Hamling* (1909), 172 Ind. 645.

By §8642, *supra*, it is provided that " all by-laws, ordinances and regulations, not inconsistent with this act, shall remain in full force until altered or repealed by the common council of such city," and by §9016 Burns 1908, Acts 1905 p. 219, §272, that " all former laws within the purview of this act except laws not inconsistent herewith * * * are hereby repealed." We hold therefore that conferring the power upon the board of public works " to remove all dead animals, * * * by contract or otherwise," is the conferring of exclusive authority of a contractual and administrative character as to that subject, so far as the disposition of such animals is concerned, and is not inconsistent with or in conflict with the right of councils under the express power given by the statute or under their general powers, to punish by ordinance unauthorized persons for violations of a reasonable ordinance providing for the re-

moval of dead animals, not in the vindication of any private rights, but as a public regulation for the protection of society. The ordinance was not repealed by the act of 1905, *supra.*

It is next urged that the ordinance is void for indefiniteness, in that it provides " for the removal of the carcasses of all dead animals; * * * provided further that only such carcasses are to be removed as may lawfully be removed and disposed of by said city," the objection being, that it may apply as well to nonoffensive carcasses, or those of animals slaughtered for food, as to any other, and provides no legal standard by which to determine, or by whom it may be determined, what carcasses may lawfully be removed.

An ordinance must be so definite and certain as to leave no reasonable doubt as to what is intended, but its terms will not be so strictly construed as to defeat its purpose, if it is sufficiently definite to be understood with reasonable certainty.

The term " dead animals " has a legal, recognized and definite meaning, importing such a dead animal as in some way endangers the public health. The term does not apply to all dead animals. *Underwood* v. *Green* (1870), 42 N. Y. 140.

It is held that an ordinance drawn in the language of an express statute is sufficiently definite. *Shea* v. *City of Muncie* (1897), 148 Ind. 14; *Nealis* v. *Hayward* (1874), 48 Ind. 19; *In re Harris, supra.*

As the statute provides for the removal of dead animals, and as dead animals are such as in some way endanger the public health, we must assume that in passing the ordinance the council had this definition in mind, which in and of itself excludes the idea of any other class of dead animals, so that the ordinance does provide the standard for the selection of the dead animals.

For the reason that there is a right of property in the owner of a dead animal, until such time as it becomes or is likely

to become, a nuisance (28 Cyc. 720), the court should give the ordinance a construction that will render it valid, and in that view the language, "only such carcasses are to be removed as may lawfully be removed," means such carcasses as are, or are likely to become, detrimental to health or offensive to the senses. This construction is a fair one, as defining the carcasses intended, in view of the rights of property which may not be interfered with except upon the ground of protecting the public health, and the ordinance cannot apply to such animals as are slaughtered for food, or are not unwholesome, or detrimental, or likely to become detrimental to health, or offensive to the senses.

The power to provide for the removal of dead animals is an inherent one, long exercised by cities, and the fact that its exercise may put some restrictions upon the disposition, or use of property, is not sufficient to deny the power. It is undeniable that some property rights may be curtailed or even sacrificed, in the exercise of the police power, which is as unlimited and inalienable as the necessity for its exercise. *State* v. *Barrett* (1909), 172 Ind. 169; *Adams Express Co.* v. *State* (1903), 161 Ind. 328, and cases cited; *Walker* v. *Jameson, supra; Baumgartner* v. *Hasty* (1885), 100 Ind. 575, 50 Am. Rep. 830, and cases cited; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426; *Mayor, etc.,* v. *Gerspach, supra; Boehm* v. *Mayor, etc.* (1884), 61 Md. 259; *In re Vandine* (1828), 6 Pick. 187, 17 Am. Dec. 351; *Northwestern Fertilizing Co.* v. *Hyde Park* (1878), 97 U. S. 659, 24 L. Ed. 1036; 15 Am. and Eng. Ency. Law 1173; 2 Beach, Pub. Corp. §995; 2 Dillon, Mun. Corp. (5th ed.) §598; Horr & Bemis, Mun. Police Ord. §212.

Finally it is urged that the complaint is insufficient and indefinite, in that it will not bar another action for the same cause, that it does not disclose the name of the owner of the horse, nor the place from which the carcass was removed, nor how it was removed, nor that it was hauled through the streets, nor that the city had an existing contract with a scavenger to remove the carcasses of dead animals.

As to the last proposition it may be pointed out that in pleading an ordinance, as in case of a statute, if the offense is defined without the proviso, or exception, it is 12. sufficient, even in a criminal case. *State* v. *Barrett* (1909), 172 Ind. 169; Horr & Bemis, Mun. Police Ord. §175.

The thing aimed at by this ordinance is the removal of dead animals, and the manner of removal.

It is not material whether or not another had the right of removal, so long as appellant had not the right, and the offense was defined without reference to whether 13. there was an existing contract with another for such removals.

It is settled in this jurisdiction that cases of this class are civil actions, and that the same rules of pleading are applicable as in cases before justices of the peace. 14. *Shea* v *City of Muncie, supra; Berkey* v. *City of Elkhart* (1895), 141 Ind. 408; *City of Greensburgh* v. *Corwin* (1877), 58 Ind. 518; *City of Goshen* v. *Croxton* (1870), 34 Ind. 239; *Whitson* v. *City of Franklin* (1870), 34 Ind. 392.

In civil actions before justices of the peace, while a 15. substantive cause of action must be stated, a large degree of liberality is allowable.

A complaint is sufficient if it informs the defendant of the nature of the claim, and a judgment in the suit may be used as a bar to another action for the same cause. *Beineke* v. *Wurgler* (1881), 77 Ind. 468; *Powell* v. *DeHart* (1876), 55 Ind. 94; *Clark* v. *Benefiel* (1862), 18 Ind. 405; *Milholland* v. *Pence* (1858), 11 Ind. 203;

While the questions which were, or might have been litigated, are determined by the pleadings, there is a distinction between what was, or what might have been de- 16. termined under the issues, and a case where the subject-matter of the litigation is not disclosed by the record, owing to the fact that the allegations by reason of generality might apply to a substantive cause of action

not actually involved, in which case extrinsic evidence may be given to identify the actual subject of litigation in a given case. *Felton* v. *Smith* (1882), 88 Ind. 149, 45 Am. Rep. 454; *Bottorff* v. *Wise* (1876), 53 Ind. 32; *Bougher* v. *Scobey* (1863), 21 Ind. 365.

If a complaint avers a material fact in an indefinite or uncertain manner, the remedy is by motion to make more specific, but if an essential fact is entirely omitted, the defect may be questioned by demurrer. *City of Goshen* v. *Kern* (1878), 63 Ind. 468; *Reynolds* v. *State, ex rel.* (1878), 61 Ind. 392; *Grand Trunk, etc., R. Co.* v. *State* (1907), 40 Ind. App. 695.

The material allegations of the complaint and the gravamen of the action in this case are that defendants violated a specified ordinance, by unlawfully removing the carcass of an animal, to wit, a horse, from the city of New Albany. It can scarcely be questioned that the removal of each carcass might, and under the ordinance does, constitute a separate cause of action, if more than one carcass were removed, and in such case, or in case several causes were joined in the same complaint, there would be much reason in requiring by motion, if otherwise indefinite, such descriptive matter as would distinguish an offense in each case, or in the several cases joined in the same action, but if a substantive cause of action is stated in any specific complaint of one or more paragraphs with reasonable certainty, if a defendant desires more definiteness, he must reach the question by a motion to make more specific.

We are not able to perceive that error was committed, and judgment is affirmed.