| 1 | 315 |
|---|-----|
| 126 | 598 |
| 1 | 315 |
| 148 | 33 |

THE COMMON COUNCIL OF THE TOWN OF INDIANAPOLIS *v.* FAIRCHILD.

In an action of debt under the charter of the town of *Indianapolis*, for vending spirituous liquors without license, a plea alleging that the corporation cannot grant a license, is bad.

Nov. Term,
1848.

THE COMMON
COUNCIL, &c.
v.
FAIRCHILD.

Saturday,
February 10,
1849.

Section 3, of Art. 9, of the constitution, applies only to breaches of the *criminal* law, properly so called.

A suit on a penal statute is not a criminal but a civil cause.

ERROR to the *Marion* Circuit Court.

BLACKFORD, J.—This was an action of debt against *Fairchild* for 100 dollars.

The suit was commenced in *January*, 1841, before the president of the common council of *Indianapolis*, and judgment was rendered for the plaintiff. The defendant appealed to the Circuit Court.

The declaration states that, in *June*, 1839, the common council of *Indianapolis*, by an ordinance (which is set out), ordered that a tax of 100 dollars per annum should be levied on each license to sell, by a less quantity than a quart at a time, spirituous liquors, &c., within the bounds of said town or of the donation for the seat of government; that the defendant, on the 16th of *December*, 1840, and at divers other times, sold such liquors within said bounds, by a less quantity than a quart at a time, to one *James Rosin*, without having previously obtained a license from the corporation, contrary to the form of the statute and of said ordinance; whereby an action had accrued, &c.

There are three pleas in bar.

The first plea is *nil debet*.

The second plea is as follows: That by an act of the legislature in 1839, it was enacted, "that, in no case whatever, should the common council of *Indianapolis* levy or collect any taxes, in money or labor, from the inhabitants of the donation on the west side of *White* river for any use or purpose of the corporation proper, not more than is necessary and sufficient to keep in good repair all the streets and alleys running through the donation on that side of the river." Averment, that the defendant is an inhabitant of the donation west of *White* river; that the sale of liquor mentioned in the declaration was made on the west side of said river; and that there are no streets or alleys on said west side of *White* river in said donation, upon which any taxes in money or labor levied or collected by the council could be appropriated or expended. Verification.

The third plea is the same with the second, except that instead of saying that there are no streets or alleys, &c., upon which, &c., it alleges that the money sought to be collected in this action, was not intended by the council to be appropriated for the repairing of the streets and alleys west of *White* river in said donation, but for other purposes. Verification.

General demurrers to the second and third pleas.

Judgment in the Circuit Court, on the demurrers, for the defendant.

We think the second plea is bad. The charter of the town of *Indianapolis*, granted in 1838, prohibited the retailing of spirits in the town, which included the place named in the plea, without a license from the corporation, under a certain penalty. The present suit is for the penalty inflicted by said charter for retailing spirits without license. The plea, admitting that it shows that no taxes can be imposed at the place where, &c., is no defence to the suit. It does not follow that, because the inhabitants of a part of the town are excused from taxes, they may violate the charter by retailing spirits there without license. Even supposing that the plea, by showing that no tax could be imposed at the place, &c., shows that no license to retail spirits there could be granted, it would still be no defence. The fact that the defendant could not obtain a license, would be no reason for his selling without one, contrary to the charter.

The third plea is no better than the second.

The defendant objects to the declaration on the ground that the fine in this case should have been given to the county seminary and not to the plaintiff.

The charter of the town contains the following provision, before referred to: That no person shall, within the bounds of the town, &c., sell, by a less quantity than a quart at a time, any spirituous liquors, &c., unless he shall, in addition to a license obtained from the board of county commissioners, obtain license from the corporation for one year, who is hereby authorized to grant the same on his paying into the treasury of the coporation a sum not exceeding 100 dollars, at the discretion of the

corporation; and that if any person shall sell any spirituous liquors, &c., within said limits, contrary to the provisions of this act, he shall, in an action of debt, upon conviction thereof before the president of said corporation, be fined in any sum not more than 100 dollars, nor less than 50 dollars, for the use of the corporation. Local Laws of 1838, p. 32, s. 30.

The said charter is, by a clause in it, declared to be a public act.

The position taken by the defendant, that the above-mentioned penalty should have been given to the county seminary, depends on that clause of the state constitution which says that all fines assessed for any " breach of the penal laws," shall be applied to county seminaries. Article 9, s. 3. We consider this clause of the constitution as applying only to breaches of the *criminal* law, properly so called; that is, to crimes and misdemeanors.

It is held that a suit on a penal statute is not a criminal but a civil cause. *Atchison* v. *Everett*, Cowper, 382. Such a statute, therefore, is no part of the criminal law. It follows, that if our construction of said constitutional provision be correct, it was not necessary that the penalty in question should go to the county seminary; the penalty not being for the breach of any criminal law.

One reason for our opinion, that the words " penal laws" in said provision, mean criminal laws, is, that the word *fines* there used is the term commonly employed to designate, not penalties or forfeitures for violations of penal statutes, but pecuniary punishments for breaches of the criminal law. It is probable, that if the proceeds arising from civil suits for such penalties as that now in question, had been intended to be embraced by the constitution, the words fines and penalties, or fines and forfeitures, instead of the word " fines," would have been used.

There is another reason for this opinion. The constitution, in the next sentence after that in which said words " penal laws" occur, requires the legislature to form a " penal code." The following is the language of the constitution: " All fines assessed for any breach of the

*penal laws* shall be applied to said seminaries, in the counties wherein they shall be assessed.    Section 4.  It shall be the duty of the general assembly, as soon as circumstances will permit, to form a *penal code*, founded on the principles of reformation, and not of vindictive justice." Article 9, ss. 3, 4.    It may be fairly presumed that the word penal, occurring in these adjoining sentences, was intended to have the same meaning in both.    And as we know that that word, in the latter sentence, meant criminal—a penal code being a criminal code—we conclude that penal, in the other sentence, also means criminal— that penal laws there mean criminal laws.  This is a case where the maxim "*Noscitur a sociis*" seems to be applicable.

It is our opinion, therefore, that the objection to this suit, on the ground that the penalty sued for could not be constitutionally given to the plaintiff, but only to the county seminary, is not well founded.

*Per Curiam.*—The judgment is reversed and the proceedings subsequent to the joinder in demurrer set aside, with costs.   Cause remanded, with instructions to the Circuit Court to sustain the demurrers to the special pleas, with leave to the defendant to amend those pleas.   Costs here.

*H.* and *H. Brown*, for the plaintiff.

*S. Yandes* and *C. Fletcher*, for the defendant.