526    APPELLATE COURT OF INDIANA,

The City of Hammond *v.* The New York, Chicago and St. Louis R'y Co.

No. 69.

## The City of Hammond *v.* The New York, Chicago and St. Louis Railway Company.

Municipal Corporation.—*Ordinances.*—*How Enacted.*—*Signing, Attesting and Recording of.*—Under section 3099, R. S. 1881, all by-laws and ordinances enacted by the common councils of cities are required within a reasonable time after their passage, to be recorded in a book kept for that purpose, and to be signed by the presiding officer and attested by the clerk.

Same.—Where an ordinance was duly and legally passed and adopted by the common council of a city and was spread of record at length and recorded in the minutes of the council proceedings in a book kept for that purpose, and the minutes of all the proceedings of said session at which said ordinance was passed and adopted were duly signed and attested by the clerk of said city, but said ordinance was not signed apart from said council proceedings, there was a substantial compliance with section 3099, R. S. 1881, in the matter of the signing, attesting and recording of said ordinance. *Bills* v. *City of Goshen,* 117 Ind. 221, distinguished.

Same.—*Railroad.*—*Ordinance Regulating Speed of Trains.*—*Proceeding to Enforce Penalty.*—*Civil Action.*—*Penalty May be Recovered of Company.*—An action brought by a municipal corporation to enforce a penalty for the violation of an ordinance regulating the rate of speed at which railroad trains shall be run through the corporate limits is not a criminal proceeding, but essentially a civil action, and where the provisions of the ordinance are violated by an engineer of a railroad company the penalty may be recovered in an action against the company. *Hipp* v. *State,* 5 Blackf. 149; *Lauer* v. *State,* 24 Ind. 131, and *Hanson* v. *State,* 43 Ind. 550, distinguished.

From the Porter Circuit Court.

*S. Griffin* and *E. D. Crumpacker,* for appellant.

*R. C. Bell* and *S. M. Morris,* for appellee.

Fox, J.—This case was originally appealed from the Porter Circuit Court to the Supreme Court, but that court, in the case of *City of Hammond* v. *New York, etc., R. W. Co.,* 126 Ind. 597, decided that the proper jurisdiction was in this court, and so transferred it.

In order to make apparent the questions submitted for our

consideration, we find it necessary to make the following abstract of the facts as they appear in the record :

Upon the 13th of August, 1888, the common council of the city of Hammond, at a regular session, enacted an ordinance, the first and third sections of which were as follows :

"Section 1st. Be it ordained by the mayor and common council of the city of Hammond, that it is hereby declared to be unlawful for any railway, or railway company, by its officers, agents or servants, or any other person or persons, to move or cause to be moved, or propelled or driven, any railroad car or locomotive within the corporate limits of said city at a greater rate of speed than six miles an hour.

"Section 3d. Any railway or railway company, or conductor, engineer, agent, servant, or other persons violating any section or provision of this ordinance shall, for every such offence, forfeit and pay to said city any sum not exceeding $100."

That upon the 11th day of September, 1888, the appellee was the owner of a line of railway, a portion of which was located within the corporate limits of said city ; that upon the day aforesaid one Germain, an engineer in the employ of said company, being in charge of one of their locomotives and a train of passenger cars, while passing over the said line of railway within the corporate limits of said city, run the same at a greater rate of speed than six miles an hour, in violation of the provisions of said ordinance ; that thereupon an affidavit was filed against the said company before the mayor of said city and a trial had, resulting in a judgment of $100 against the company. An appeal was taken to the Lake Circuit Court, from which a change of venue was taken and the case sent to the Porter Circuit Court. The case was then tried before the court, without a jury, and a judgment was rendered in favor of the appellee. The court, upon request, made a special finding of the facts involved, upon which were based conclusions of law. The finding of facts and the conclusions of law appear in the record. The

court, after finding the necessary preliminary facts, and setting forth the ordinance in question, found the following facts in the case :

" That said ordinance was duly and legally passed and adopted by the common council of said city, and was spread of record at length and recorded in the minutes of said council proceedings in a book kept for that purpose, which said minutes of all the proceedings of said session at which said ordinance was passed and adopted were duly signed by the presiding officer and attested by the clerk of said city, but said ordinance was not signed apart from said council proceedings ; that said ordinance, so passed and adopted as aforesaid, was duly and legally published as by law required in the month of August, 1888, and was in force and effect on and prior to September 11, 1888, of all of which. said defendant had due notice before the 11th day of September, 1888 ; that said ordinance was not recorded in any other book separate from said record of said council proceedings ; that before said 11th day of September, 1888, said defendant had duly notified its agents, servants, and employees operating or in charge of its trains of the provisions and terms of said ordinance, and commanded and expressly required them and each of them not to run trains, or cars, in and through the limits of the plaintiff's city in violation of said ordinance, but to conform to its requirements and be governed by its provisions ; that all of the ordinances of said city were recorded in the minute book of council proceedings above mentioned, and plaintiff had no other book containing records of ordinances.

" 4. That on the 11th day of September, 1888, R. M. Germain, an engineer of defendant, in charge of a passenger train of defendant's en route for said city of Chicago, while running the same in and through the limits of plaintiff's city, ran said train in and through said city of Hammond in violation of said ordinance, at a rate of speed forbidden by it, to wit, in excess of eight miles an hour.

" 5. That said engineer had due notice of the adoption and passage of said ordinance, and had been expressly, notified by said defendant before said 11th day of September, 1888, to comply with its provisions, and not to run its trains in and through the limits of said city at a rate of speed to exceed the speed required by said ordinance, and that said railroad company never assented to the act of said engineer."

Upon the finding of facts the court based the following conclusions of law :

" 1. That said ordinance was duly passed, adopted and published, and was in full force and effect on the 11th day of September, 1888.

" 2. That as the violation of said ordinance herein complained of was committed by its, defendant's, engineer, R. M. Germain, as hereinbefore found, against its express command, and without its assent, said railroad company is not liable herein.

" 3. That on the foregoing facts, for the reason stated in instruction No. 2, the law is with the defendant."

Judgment was rendered accordingly.

The appellant's assignment of error is as follows :

1. The court erred in its conclusion upon the facts and each of them.

2. The court erred in its second conclusion of law.

3. The court erred in its third conclusion of law.

A cross-error has been assigned by the appellees " that the court erred in its first conclusion of law, which on the facts found should have been that said ordinance was invalid and not in force and effect."

The judgment that we have concluded to render in this case makes it necessary for us to consider the cross-error assigned. This we will do in the outset. This presents the question—was the ordinance invalid for the reason that it was not properly, signed, attested and recorded ?

Concerning " by-laws and ordinances" enacted by the

common councils of cities, section 3099, R. S. 1881, provides as follows:

" 3099. All by-laws and ordinances shall, within a reasonable time after their passage, be recorded in a book kept for that purpose, and shall be signed by the presiding officer of the city and attested by the clerk. On the passage or adoption of any by-law, ordinance, or resolution, the yeas and nays shall be taken and entered on the record."

It can well be inferred that the reason for the enactment of this statute, and the purpose to be accomplished by it, was to remove all uncertainty as to the identity of ordinances in force in the city, as well as to furnish proper and unmistakable evidence of their contents. For this purpose the statute requires that all ordinances shall be signed by the presiding officer of the city and attested by the clerk, and be recorded "in a book kept for that purpose." It is a matter of common knowledge, in which the court must be held to share, that in a common council of a city, as in other legislative bodies, " bills " are prepared and introduced by the individual members, and as a usual thing are written upon separate and detached pieces of paper. When the " bill " is under consideration, it is subject to change and modification by amendment. When it is " passed " it becomes an ordinance, and as such goes into the hands of the clerk to be by him placed on file in his office. If left in the condition in which it is when it goes into his hands, and nothing further is done with it, it would contain no evidence upon its face that it was a proper ordinance. No other evidence of its contents than the original paper would be in existence. To obviate all this, the statute requires that it shall be signed, attested and recorded. When this is done, its identity as an ordinance is fixed, and proper evidence of its contents furnished, easy of access to all concerned. But how shall this signing, attesting and recording be done? Was there a substantial compliance with the provisions of the statute in this case is the question to be answered.

The City of Hammond *v.* The New York, Chicago and St. Louis R'y Co.

Counsel for appellee say in their brief that "this question has been squarely decided" in the case of *Bills* v. *City of Goshen,* 117 Ind. 221. We have read that case with some care. If it "squarely decides" the question involved in the case before us, as counsel contend, then the matter is settled as far as this court is concerned, for we have no power to "directly nor by implication reverse or modify any decision of the Supreme Court." But we do not so understand that case. The question there involved was essentially different from the one involved here. In that case the question as to whether the ordinance set forth in the opinion had been signed, attested and recorded, or not, was not before the court. The real point was that the ordinance in question did not fix the amount of license fees sought to be charged against the defendant, and an attempt was made by the common council to supply the omission by an ordinary motion made by "Councilman Drake." This, it was very properly held, could not be done.

In the course of the opinion OLDS, J., says, in speaking of the legality of an ordinance, the statute "requires it to be signed by the presiding officer and attested by the city clerk and recorded, and having vested the power in the city to be exercised in a certain way, it can not be enforced otherwise than as provided by statute." An examination of the case will show that the questions decided by the court will not furnish us with any light whatever in the case before us.

The court in its special finding states the fact to be that the ordinance "was spread of record at length and recorded in the minutes of said council proceedings in a book kept for that purpose," and that the minutes so containing a record of the ordinance "were signed by the presiding officer and attested by the clerk,   *   *   *   that all the ordinances of said city were recorded in the minute book of council proceedings, and plaintiff had no other book containing record of ordinances." The record of the meeting in which the

ordinance " was spread at length" showed upon its face that it was a continuous one, and only contained the minutes of the proceedings of a single meeting. The signing thereof by the presiding officer and the attestation of the clerk were equivalent to signing each particular order, resolution or ordinance contained therein, severally. The minutes so entered certainly constitute a record. All the ordinances of the city were so recorded and not otherwise, for no other book was kept or used for that purpose. Considering the subject and object of the statute, we think there was a substantial compliance with the spirit of its provision, and that the ordinance was to all intents signed, attested and recorded. The case of *Upington* v. *Oviatt*, 24 Ohio St. 232, is very much in point. It was there held that a statute requiring ordinances of municipal corporations to be recorded "in a book kept for that purpose" is directory only, and that recording an ordinance in the "journal of the council" was sufficient.

We come now to the errors assigned by the appellant. Counsel in argument do not claim that the city of Hammond did not have the power to pass the ordinance in question. If this point had been presented by the record and urged by counsel this court would have no jurisdiction in the premises. *City of Hammond* v. *New York, etc., R. W. Co., supra;* Elliott App. Proc., 35. This, however, is not an open question, for such power is expressly given by section 3106, R. S. 1881. In the examination of the powers conferred upon cities in this section the forty-second sub-division thereof provides as follows:

"Forty-second. To regulate the speed of railroad trains through the city, and also provide, by ordinance, for security of citizens and others from the running of trains through any city, and to require railroad corporations to observe the same."

The question which we are required to answer is this: Do the facts, as found by the court at the trial, absolve the

railroad company, as such, from liability on account of the violation of the ordinance complained of? It is virtually conceded that upon the 11th day of September, 1888, a passenger train of cars, owned by the said company, and in charge of one of its employees, passed through the corporate limits of said city, over the company's road, at a speed "in excess of sixty miles an hour."

The court found as a fact that after the said ordinance had gone into force, the appellee, having knowledge of the fact, notified its servants and employees of its requirements, and "commanded and expressly required them" not to violate "its provisions;" that the engineer, Germain, after being so "commanded and required," without the knowledge and consent of the company, and in violation of the orders given him, did the act complained of. Counsel for appellee contend in argument that the company is not liable under the circumstances; that as a corporation it did all it could do; that if there was a violation of the ordinance it was by the individual act of the engineer, and that he alone was responsible. In support of this theory, we are referred to the following cases: *Hipp* v. *State*, 5 Blackf. 149; *Hanson* v. *State*, 43 Ind. 550; *Lauer* v. *State*, 24 Ind. 131. These cases hold that a master is not responsible for crimes committed by his servant or agent without his knowledge, connivance or consent.

In *Hipp* v. *State*, Justice BLACKFORD, among other things, in his opinion, says: "The general rule is that a master is liable in a *civil* suit for the negligence or unskilfulness of his servant, when he is acting in the employment of his master; but that he is not subject to be punished by *indictment* for the offences of his servant, unless they were committed by his command or with his assent."

The correctness of this rule, when applied to master and servant in their relations as they ordinarily exist, may well be admitted. In criminal prosecutions the primary object is to punish the offender. In civil actions responsibility is

often fixed and remedies afforded with a different motive and for a different purpose, except in those cases where vindictive or punitive damages are allowed, or where penalties are awarded in the nature of civil remedies. The theory of the criminal law is that he who violates the law must suffer the penalty. It would be strange indeed if innocent persons were required to suffer punishment and atone for the crimes of others. But the same strictness is not applied in civil cases. There the purpose is not to punish crime, but to enable persons who have been injured or damaged to obtain redress from those who are responsible by reason of their own conduct or that of their agents, servants and employees. In a criminal case the injured party obtains no redress, nor is, in any wise, compensated for damages sustained. For this he is remitted to the civil courts, where a different theory is adopted, and different rules apply.

Before learned counsel can bring the case before us within the scope of the cases cited and the rules laid down therein, they must bring the act complained of within the catalogue of crimes, and show that in its prosecution the criminal jurisdiction of the court was invoked. This has not, and we apprehend, can not be done. The cause of action, as charged in the complaint, and as found by the court, in no sense constituted a crime under the statutes of this State, either *malum in se* or *malum prohibitum*. Section 1728, R. S. 1881, requires that " all criminal prosecutions must be in the name of the State of Indiana," and thus the title becomes an index to the character of the case. This was not done in this case, and from this we infer that the parties to the action understood that it was not brought as a criminal prosecution. If it is not a "criminal case," then the authorities cited and the rules sought to be applied by counsel can have no application.

It is well settled in this State that an action brought by a municipal corporation to enforce a penalty for a violation of an ordinance is essentially a civil action. In the case of *City*

*of Goshen* v. *Croxton,* 34 Ind. 239, the court says : "A suit before the mayor to recover a penalty for the violation of a city ordinance, though a warrant for the arrest of the defendant may be issued and served, is a civil suit; and the rules of practice in civil suits apply and are to be observed on the trial." See, also, *City of Greensburgh* v. *Corwin,* 58 Ind. 519.

Prior to the enactment of section 1640, R. S. 1881, if a person had been prosecuted criminally for an act done, and convicted and punished, still he could not claim the constitutional protection of " once in jeopardy " in a suit brought against him for the same act as a violation of a city ordinance, and this for the reason that one was a criminal and the other a civil action. *Ambrose* v. *State,* 6 Ind. 351 ; *Williams* v. *City of Warsaw,* 60 Ind. 457 ; *City of Indianapolis* v. *Huegele,* 115 Ind. 581.

The right of a city to impose penalties for violation of its ordinances, and to receive the same when collected, is in many respects analogous to those cases in which penalties are given by statute to be enforced by persons for their own benefit against those who violate such statutes by doing the things forbidden. The case of *George* v. *Gobey,* 128 Mass. 289, is an instructive case in point. In that case an action was brought to recover a penalty given by statute from one engaged in the sale of intoxicating liquor, for selling such liquor to a person in the habit of becoming intoxicated after notice. The defence was that the liquor was sold by the defendant's barkeeper without his knowledge or consent and in violation of his instructions. The court says in the opinion : "At common law, the master is responsible for the wrongful acts of his servant done in the execution of the authority given by the master, and for the purpose of performing what the master has directed, whether the wrong done be occasioned by the mere negligence of the servant, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner. But if the servant

goes outside the scope of his employment, and does a wrongful act for a purpose of his own, and not in the performance of his master's business, the master is not responsible. * * * The fact that the act done is contrary to an express order of the master will not exonerate him." See, also, *Roberge* v. *Burnham*, 124 Mass. 277; *Com.* v. *Emmons*, 98 Mass. 6; *Peoria, etc., R. W. Co.* v. *Derby*, 14 How. 467.

Penalties are not infrequently given against corporations by statute, to be recovered in civil actions by persons interested as a convenient remedy for a neglect of the duties required of them. See *Western Union, etc., Co.* v. *Gougar*, 84 Ind. 176; *Western Union, etc., Co.* v. *Pendleton*, 95 Ind. 12. Penalties in such cases are in the nature of punitive damages to be recovered in civil actions, for the amount to be received does not depend upon the amount of damage actually sustained. So, likewise, when a city made an ordinance forbidding or commanding the doing or not doing of certain acts, the penalty provided is in the nature of punitive damage to be recovered in a civil action. If the ordinance is reasonable, then the penalty may be enforced; if it is not reasonable, then it may be declared void by the proper court.

The relation between public corporations, such as cities, and *quasi* public corporations, such as railway companies, is a matter for consideration in this connection. Corporations in exercising their powers and asserting their rights have no head or hands save those of their officers, agents, servants and employees. They are simply *legal* persons without the power of thought or judgment. Every contract they make, every act they do, is by or through their servants; therefore, strictly speaking, in every such case there is no intelligent principal. When the engineer in this case receives his instructions, he receives them from the servants of the corporation and not from the corporation itself.

The engineer, Germain, upon the 11th day of September, 1888, was in charge of a passenger train owned and subject

to the control of the company, and while engaged in running it over their road he was strictly in the line of his duty. It was his duty to take the train through the city of Hammond. When, in doing so, he exceeded the limit of speed fixed by the ordinance, he committed no crime. He simply transgressed one of the laws of the city for which a penalty was provided to be recovered by the city in a civil action. The company was responsible for the conditions that made the violation of the ordinance possible. It placed the engineer in charge of the train, and directed him to take it through the city of Hammond. These matters the city did not and could not control. Can it reasonably be said, under these circumstances, that the company will be permitted to absolve itself from all responsibility in the premises by simply giving secret instructions to its servant?

City ordinances for the purpose of controlling the speed of railway trains are in the interest of the public. They are enacted by virtue of the police power vested in municipal corporations for the protection of life and property. The public demand for rapid transit has created the sharpest competition between rival railroad companies, and the wonderful speed with which trains are now moved has brought about a condition of things requiring perfect machinery and a degree of care that never before existed, and the increased risk and hazard to which the public is subjected by reason of this condition of affairs, makes it necessary to exact from such companies a corresponding degree of accountability, if the law is to be regarded as a progressive science. To say in a case like this that an engineer may violate the provision of a city ordinance by recklessly running his train at great speed within the corporate limits, thus defying the city authorities, and that for so doing the company is no wise responsible for the reason that the engineer was instructed not to do so, is a doctrine to which this court can not subscribe. Such a doctrine would virtually nullify city ordinances, and render the city authorities in a measure helpless. Even if

The City of Hammond *v.* The New York, Chicago and St. Louis R'y Co.

the engineer was known, it would be difficult to arrest him, for in his cab he would move in and out of the jurisdiction of the city in a manner that would make it impossible to reach him. Holding the company responsible for the acts of their servant in such cases is a reasonable rule, for the relation is voluntarily assumed by the company. The servant is under their control, and it is in their power to discipline or discharge him if he disobeys their instructions. The city has no such power in the premises. We think it is reasonable and proper to require railroad companies to see to it that engineers in charge of their trains and controlling the speed thereof observe ordinances of cities regulating the speed of trains within their corporate limits. Indeed, we think a key is furnished for solving the problem before us in the statute above referred to, granting cities the power to enact ordinances regulating " the speed of railroad trains " within the corporate limits of such cities. The statute not only grants the power to cities to enact such ordinances, but it expressly provides that such cities " may require railroad corporations to observe the same." There can be no mistake as to the import of this clause in the statute. It clearly implies that the observance of such ordinances may be enforced against the corporations as such, as well as against their agents, servants and employees. Under this statute the act of an engineer in the management of his train is the act of the company.

The judgment of the court below is reversed at the costs of the appellee, with instructions to the court to restate the conclusions of law upon the findings of fact in accordance with this opinion, and to render judgment thereon in favor of the appellant for such an amount as the court may deem proper upon the evidence given at the trial not exceeding the sum of one hundred dollars.

CRUMPACKER, J., having been of counsel in the case, was absent.

Filed Sept. 30, 1892; petition for a rehearing overruled Dec. 14, 1892.