BIEDINGER *v.* CITY OF EAST CHICAGO.

[No. 18,985. Filed November 13, 1958.]

*Rae M. Royce* and *Bomberger, Morthland & Royce,* of counsel, of Hammond, for appellant.

*Cecil Cohen* and *John P. Segovia,* both of East Chicago, for appellee.

PFAFF, C. J.—Appellant was tried in the City Court of the City of East Chicago, Indiana, on a charge of violating a city ordinance. He was found guilty, ordered to pay a fine of $25.00 and sentenced to serve thirty days in the county jail. Jail sentence was suspended on the condition that the violation cease and that there be no further violations. He thereupon attempted to appeal to the Lake Circuit Court, and the latter court, on motion of appellee, dismissed the appeal. The question presented here is whether appellant followed the necessary steps to perfect an appeal to the Circuit Court.

While appellant's brief is not as detailed as it might be, it does appear from the briefs that following conviction appellant filed an appeal bond in the City Court, which bond was approved by that court and thereafter a transcript was filed with the Circuit Court. There was no præcipe for a transcript and the transcript did not include therein a bill of exceptions containing the evidence. Apparently, there was no assignment of errors and briefs were not filed in the Circuit Court. Appellee contends that this appeal involves less than $50.00 and, therefore, this court has no jurisdiction. §§2-3201, 4-211, 4-213 Burns' 1946 Repl. If no more was involved in this appeal than the penalty imposed of $25.00, appellee's contention might have merit, since the imprisonment which might follow a failure to pay or replevy the judgment would merely serve as a means of cœrcing payment. *Jerzakowski* v. *City of South Bend* (1924), 82 Ind. App. 132, 145 N. E. 520; *Vonderweit* v. *The Town of Centerville* (1860), 15 Ind. 447, *Donovan* v. *The Town of Huntington* (1865), 24 Ind. 321; *Seibert* v. *City of Evansville* (1924), 195 Ind. 189, 144 N. E. 841; *The Town of North Manchester* v. *Oustal* (1892), 132 Ind. 8, 31 N. E. 450; *City of Greensburg* v. *Cleveland, etc. R. Co.* (1899), 23 Ind. App. 141, 55 N. E. 46. Assuming the statutory limitation on the right to appeal to be a valid statutory limitation, *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, nevertheless it is not applicable here, as imprisonment was initially adjudged as a part of the punishment. In *Quigley* v. *The City of Aurora* (1875), 50 Ind. 28, our Supreme Court said:

> "It is quite obvious that the imprisonment is imposed for a failure to pay or replevy the judgment, and as a means of cœrcing the payment of the judgment, and not as a part of the penalty for

a violation of a city ordinance. If the imprisonment was imposed as a part of the punishment, this court would have jurisdiction, because the personal liberty of the party would be involved, which would confer jurisdiction. . . .". Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2154, Comment 2, p. 33; West's *Indiana Law Encyclopedia, Appeals*, §23, p. 531.

It has many times been held in this state that a prosecution for the violation of a city ordinance, in which a monetary penalty only is sought is a civil and not a criminal action. *The Common Council of the Town of Indianapolis* v. *Fairchild* (1848), 1 Ind. 315; *Bogart* v. *The City of New Albany* (1848), 1 Ind. 38; *Levy* v. *The State* (1855), 6 Ind. 281; *The Board of Commissioners of Tippecanoe County* v. *Chissom* (1856), 7 Ind. 688; *City of Goshen* v. *Croxton* (1870), 34 Ind. 239; *The City of Greensburgh* v. *Corwin* (1877), 58 Ind. 519; *The Town of Brookville* v. *Gagle* (1880), 73 Ind. 117; *Miller* v. *O'Reilly* (1882), 84 Ind. 168; *Clevenger* v. *The Town of Rushville* (1883), 90 Ind. 258; *Shea* v. *The City of Muncie* (1897), 148 Ind. 14, 46 N. E. 138; *Smith et al.* v. *City of New Albany* (1910), 175 Ind. 279, 93 N. E. 73; *Seibert* v. *City of Evansville, supra; Ridge* v. *The City of Crawfordsville* (1891), 4 Ind. App. 513, 31 N. E. 207; *The City of Hammond* v. *The New York, Chicago & St. Louis Ry. Co.* (1892), 5 Ind. App. 526, 31 N. E. 817; *Griffee* v. *The Town of Summitville* (1894), 10 Ind. App. 332, 37 N. E. 280; *City of Greensburgh* v. *Cleveland, etc., R. Co., supra; Jerzakowski* v. *City of South Bend, supra.* At common law, penalties for the breach of by-laws were recoverable either in debt or assumpsit. *The Town of Brookville* v. *Gagle, supra.* A recent law journal article states that Indiana is one of a minority of states holding that prosecutions

for the violation of a city ordinance are civil actions. In other states the actions are termed criminal, quasi-criminal, quasi-civil, civil with criminal aspects, not strictly criminal or summary penal actions. 31 Indiana Law Journal (Initial Imprisonment for the Violation of City Ordinance), p. 486.[1]

1. "Statutes in thirty-five states authorize municipal corporations to enforce their ordinances by the imposition of initial imprisonment upon convicted offenders as a part of the basic punishment, as well as to enforce the payment of a fine. Although it is well settled that imprisonment may be imposed to enforce the payment of a fine, imprisonment as an initial part of the penalty for the violation of a municipal ordinance posits grave legal questions. The sanction of imprisonment is clearly criminal in nature; yet the procedural safeguards afforded are, in prosecutions for violations of the ordinances, often inadequate and loosely applied. Such summary proceedings are an encroachment upon that right normally most closely guarded by both laymen and the legal profession, personal freedom.

"It is clear that imprisonment is a sanction which should be initially imposed only upon conviction for a criminal offense; the Wisconsin Supreme Court has held, moreover, that such a sanction may constitutionally be imposed only upon conviction for a crime. Although the constitutional argument has been summarily dismissed by other courts which have considered the problem, there is a growing acceptance of the thesis that initial imprisonment should not be imposed unless criminal procedural safeguards are afforded. Under the English common law, the courts established the precedent that a municipality may not impose initial imprisonment for the violation of a by-law, although imprisonment could be imposed to enforce the payment of a fine. Various authorities have observed that the English Parliament by a statute authorized summary conviction, with initial imprisonment as a sanction, without criminal procedural safeguards, for the commission of 'petty offenses.' A few state courts have referred to this practice of Parliament in support of the imprisoning initially through a summary process by municipalities in this country. This analogy is obviously specious. There is a substantial difference between a locality authorizing initial imprisonment in a summary action and Parliament authorizing the procedure; this is clear from the variance in the English cases noted above and the Parliamentary statutes.

"Although many writers assert broadly that the weight of authority in the various states holds that prosecutions for the violation of municipal ordinances are 'civil' actions, a study of the pertinent statutes and cases shows that this assertion is fallacious; in a clear majority of states such actions are criminal, and not civil. Courts in various other states have used perplexing terminology. Such terms as 'quasi-criminal,' 'quasi-civil,' 'civil with certain criminal aspects,' 'not strictly criminal'; and 'summary penal actions' have been used to describe the prosecu-

tions. In only nine states are the actions distinctly called 'civil' actions. In but eleven states, however, may the infliction of initial imprisonment for the violation of a municipal ordinance be secured through actions which are not termed 'criminal'; in five of these the action is 'civil' or summary, while in the others the action is termed 'quasi-criminal.' Even in the thirteen states which authorize municipalities to inflict only a pecuniary penalty for ordinance violations, the bare majority designate the action to recover as 'civil.'

"The Indiana rule is both complicated and interesting. The Indiana courts have consistently held that the action to recover a penalty imposed for the violation of a municipal ordinance is a civil action. Although under Indiana statutes an ordinance may not prescribe punishment for an act made penal by the state, and only statutes of the state may define and fix punishment for crimes or misdemeanors, the Indiana legislature has stipulated that actions to impose initial imprisonment shall be prosecuted in the same manner as minor state criminal proceedings, by the municipal courts. When the action is to recover a pecuniary penalty another statute provides for a civil action to be prosecuted in the name of the city; it is this latter statute which has been the predicate of the cases in which the Indiana courts have held prosecutions under municipal ordinances to be civil actions. The Constitution of the United States and the constitutions in the various states guarantee the defendant in criminal cases the right to a trial by jury. When these provisions have been used as a defense in cases involving the violation of municipal ordinances, some courts have limited their applicability to actions where a jury trial was available before the adoption of the constitutions. Several other bases have been used to determine whether an offense in violation of a municipal ordinance must be categorized as a criminal offense or as a 'petty offense' which is not entitled to a trial by jury. Among these are the severity of the punishment and the nature of the offense itself, whether *malum prohibitum* or *malum in se.*

"The latest Supreme Court pronouncement on the subject, *District of Columbia* v. *Clawans,* involved a statute for the District of Columbia which prescribed a penalty of not more than $300 fine or imprisonment for not more than 90 days, or both, for dealing in second-hand personal property without a license. The majority of the Court held that no constitutional right to a jury trial had been violated since before the adoption of the Constitution a confinement for a period of ninety days or more was occasionally imposed for petty offenses tried without a jury. It is strange indeed that the Court, therefore, relied upon the brittle reasoning which was directly refuted as erroneous two years before in the famous Blaisdell case. The reasonings of Chief Justice Hughes seems directly applicable to the clauses in the various constitutions guaranteeing the right to trial by jury in criminal cases. In the eighteenth century the right to trial by jury in England was not fixed, but was evolving. The summary convictions allowed by the statutes of Parliament were caused, in essence, by the limited nature of the judicial system and the necessities of that time. History shows that at other times in England the right to trial by jury was curtailed, even in relation to serious offenses, and that Parliament reconsidered

and repealed the offensive statutes. The grant of power to justices of the peace to hear and decide various actions for petty offenses was necessitated by the strain on the judicial system in England, and was not the product of any clearly defined formula for summary procedure. It is reasonable to assume, that, had the widely diffused system of local courts, which this country has today, existed in England prior to the formation of this country, there would have been no necessity to devise a haphazard system of summary convictions, which one famous justice of the peace critically pointed out were in restraint of the common law.

"The same reasoning is applicable to the argument that summary convictions were prevalent in the colonies and in the various states before the adoption of the state constitutions; these summary convictions were the spawn of a deficient judicial system, and not the product of intelligent and logical jurisprudence. To suggest that today the courts are bound by the practices and concepts, prevailing before the adoption of the constitutions, which permitted summary convictions without trial by jury when criminal sanctions could be applied, is clearly erroneous.

"The clear maporapity of the states allow trial by jury for the violation of municipal ordinances; in only ten states may the penalty of initial imprisonment be imposed without the right to trial by jury at some stage of the proceedings. In several of these ten states, however, the court opinions have construed statutes which authorize only pecuniary penalties, and their attitude in cases which involve initial imprisonment, therefore, may not be predicted with certainty. In addition to adopting the *Clawans* view to justify denial of a jury trial to violators of municipal ordinances, state courts have reasoned that a jury trial should not be granted because there are large numbers of violations, conduct in cities is strictly regulated, and the penalties are usually small in comparison with the penalties under state law. These assertions have little merit. If an offense is severe enough to enforce by a criminal sanction, the community must be prepared to stand the inconvenience and increased expense needed to grant the criminal procedural safeguards which should be present when such a sanction may be imposed. Moveover, a penalty which may infringe the personal freedom of the accused cannot be considered 'small.'

"Reasoning in other state courts declares that a jury trial is not necessary in actions for the violation of municipal ordinances, because such actions are civil, and not criminal, in nature. These cases completely ignore the fact that it is a criminal sanction which is being imposed and that a loss of personal liberty results. Such actions either should not result in the application of criminal sanction, or if the sanction is applied the ordinary procedural safeguards, which are present in criminal actions should apply. This reasoning is followed in a number of jurisdictions.

"The right to trial by jury is not the only criminal procedural safeguard which, in certain states, is denied those accused of violations of municipal ordinances. Courts have held that there is no double jeopardy created when the city may appeal from a judgment of acquittal of the defendant in prosecutions for the violation of municipal ordinances. This harsh and untenable judicial position has been reversed by at least one legislature. In

the majority of the states the city it not allowed to appeal from an adverse judgment on the merits. Normally, where appeals by the city are allowed, the sanction which may be applied is pecuniary only; this is logically and historically sound, because the action may properly be deemed civil when no initial imprisonment is involved.

"In some states the quantum of evidence required to convict an accused of a municipal ordinance violation is merely a preponderance, rather than proof of guilt beyond a reasonable doubt. This does not seem improper when the proceeding is civil to recover a pecuniary penalty for the violation of an ordinance, and the greater weight of the evidence is normally sufficient to sustain a decision in favor of the city. However, in Minnesota, where initial imprisonment may be imposed, the conclusion that proof beyond a reasonable doubt is not necessary because municipal ordinances are not criminal statutes and are not governed by rules of criminal law, seems specious. This position is contrary to the holdings of the courts in most of the states.

"Another problem is presented by certain state court decisions that a prosecution under a municipal ordinance does not bar an action by the state under state penal statutes for the same act. It is axiomatic that the authority for prosecuting the violation of a municipal ordinance must be delegated to the municipality by the state; the municipality thereby becomes an instrumentality of the state in the prevention of offenses against health, safety, and welfare. Logically, if both the state and the municipality may punish an offender for the commission of a single act, the state, in effect, is punishing the offender twice. Most state courts have completely rejected this 'agency' argument, stating that the act is made penal by two separate units of government, and therefore, action by one is not a bar to prosecution by the other. A small minority of the states hold that a bar is created.

"Any attempt to resolve the problems resulting from denial of the procedural safeguards to accused violators of municipal ordinances requires consideration of several interests. The most important interest involved is the right of a person accused of an act which may result upon conviction in the imposition of initial imprisonment and the loss of personal freedom, to all the safeguards which apply in criminal prosecutions. The community, on the other hand, has an interest in disposing of prosecutions for minor infractions of municipal regulations with dispatch and without exorbitant expense. A third interest is the reputation of the accused. A violator of a municipal ordinance directed against improper parking, for example, should not be subjected to the notoriety of a criminal action. It is clear that if all prosecutions for the violation of a municipal ordinance are considered criminal actions, the stigma of criminality would improperly attach to the offender. There is also a community interest in having ordinances with sanctions harsh enough to dissuade the commission of serious offenses; certainly, in these cases, the severity of the penalty should not depend upon the financial worth of the offender.

"Although these interests are divergent, they admit to a logical and just resolution. If the community determines that an of-

In none of the Indiana cases brought to our attention in which such actions were held to be civil actions was imprisonment adjudged as an initial part of the penalty. Crimes in this state must be defined and punishment therefor fixed by statutes of the state and not otherwise. §9-2401, Burns' 1956 Replacement. Both parties to this appeal argue that the action here is a civil action and we proceed to base our decision upon that theory. The validity of the ordinance involved here is not challenged.

§4-2401, Burns' 1946 Repl., *et seq.*, makes certain general provisions for city courts, among them provision for the trial of persons for violating laws and ordinances. §4-2403, Burns' 1946 Repl., provides:

> "Appeals may be taken from a judgment of such court to the circuit or criminal court of the county and in the same manner as provided by law for appeals from justices of the peace."

Appellant in the instant case contends this statute is applicable to his appeal and he has taken the procedural steps as provided for appeals from justices of the peace.

---

fense is so grave that initial imprisonment should be set as the penalty, the community must bear the inconvenience and expense involved in assuring the accused all the procedural safeguards of a criminal action. In the case of less severe offenses, the community should prescribe only the imposition of pecuniary penalties, and these penalties should properly be recoverable in a summary or civil action.

"The issues of the right to trial by jury, of not being put twice in jeopardy for the same offense, and of having guilt proved beyond a reasonable doubt are more serious than the mere sounding of academic and abstract theories. A person accused of violating a municipal ordinance which authorized initial imprisonment as a sanction may lose his most cherished civil liberty of personal freedom. In view of a judicial reluctance to reject unsound precedent, it is incumbent upon the legislatures in the various states to review carefully the statutes relating to the imposition of fines and imprisonment and the procedures prescribed for prosecutions under municipal ordinances in order to harmonize the statutory provisions with the basic individual and community interests which should be protected."

In 1921, special provision was made as to city courts of certain, but not all, second class cities by a supplemental act, which act, in its present form, includes the City Court of the City of East Chicago. §4-2701, Burns' 1946 Repl., *et seq.* By §2 of the Acts of 1921, ch. 215, p. 588, §4-2702, Burns' 1946 Repl., appeals from such city courts "shall be taken to the circuit or superior court in the same manner as appeals are now taken from judgments rendered in the circuit court to the appellate court, except as in this act otherwise provided." It is further provided that "the appeal as provided herein shall not apply to criminal prosecutions." Unlike appeals from most other city courts there is to be no trial *de novo* but the court is to consider and review assigned errors. In *Millers Natl. Ins. Co.* v. *American State Bank* (1934), 206 Ind. 511, p. 519, 190 N. E. 433, our Supreme Court, speaking through Judge Fansler, said:

> "The statute does not provide for a trial *de novo* upon appeal from the city court, but by §2 of the act provides for an appeal from any judgment of the City Court of East Chicago to the circuit or superior court in the same manner in which appeals are taken to the Appellate Court from judgments of circuit courts; that the party desiring to appeal shall file his bond within thirty days from the date of judgment, a bill of exceptions within ten days after the rendition of judgment, and that the transcript and bill of exceptions shall be filed in the circuit or superior court within thirty days after the bill of exceptions shall have been signed. There are other provisions varying from the practice on appeal to the Appellate Court and to this court, but it is intended that the court to which the appeal is taken shall review the decision of the city court upon assigned error, and that it shall either affirm the judgment of the city court or reverse the same for error of law occurring at the trial.

"Upon this case being appealed to the Circuit Court of Lake County, that court held the section last referred to unconstitutional, and proceeded to try the case *de novo*. Upon what theory the provision of the statute was held unconstitutional we are not advised, either by the briefs or the record, nor are we advised as to any reason why we should hold it unconstitutional. It would seem to be entirely within the power of the legislature to create courts of inferior jurisdiction in *all* cities of the second-class, and provide for a review of their decisions upon assigned error by the circuit courts of the respective counties in which the cities are located. Such a statute would be general and uniform in operation, and, so far as we know, the power of the legislature to provide for intermediate appeals is not seriously questioned.

"The section of the statute providing for an appeal is constitutional, and the circuit court had no jurisdiction to try the case *de novo*."

By §7 of the 1921 Act, §4-2706, Burns' 1946 Repl.,—

"This act shall not be construed as repealing any other law governing city courts, but shall be construed as supplemental legislation governing city courts, except where it is in direct conflict therewith."

The method of appeal provided by the Acts of 1921 is in direct conflict with the method provided by the previous Act and, in our opinion, does not merely provide an alternative method of appeal. This was recognized in effect in *Millers Nat. Ins. Co.* v. *American State Bank, supra.*

Appellant did not properly perfect his appeal to the Lake Circuit Court and the Circuit Court did not err in dismissing the attempted appeal.

Judgment affirmed.

Crumpacker, J., concurs.

Kelley, J., concurs with opinion in which Bowen, P. J., Cooper and Royse, JJ., join.

Being of the opinion that the questions involved are of sufficient importance, Divisions Nos. 1 and 2 have sat in banc for the consideration and decision of this cause as provided by §4-202, Burns' 1946 Repl.

CONCURRING OPINION

KELLEY, J.—The many cases cited in Judge Pfaff's opinion apparently tend to support the statement that "a prosecution for the violation of a city ordinance, *in which a monetary penalty only is sought* is a civil and not a criminal action." However, the referred to opinion appropriately further limits the weight of said statement by adding "In none of the Indiana cases brought to our attention in which such actions were held to be civil actions was imprisonment adjudged *as an initial part of the penalty."*

The ordinance, alleged to have been violated by appellant, does not appear in the record and whether it contained a penalty provision for the imposition of imprisonment is, therefore, not apparent. The judgment of the City Court of East Chicago was that the "defendant is guilty, ordered to pay fine of Twenty-five ($25.00) Dollars and costs *and serve 30 days in the County Jail."* (Italics supplied.) The fact that the City Court then suspended the imprisonment on certain conditions did not alter the fact that the imprisonment meted out was an *initial imprisonment* and was not assessed for the purpose of enforcing the money judgment.

It is noted that the complaint filed by appellee against the appellant made no reference or allegation as to any provision of the ordinance providing for imprisonment and did not pray for any relief in that regard.

It simply averred that appellant "did then and there violate section 9-201(a) of ordinance numbered 2525 . . . by altering the building at 1117 Beacon Street, East Chicago, Indiana, without first obtaining a building permit therefor", and that the City of East Chicago "has been damaged" in the sum of $300.00 and demanded judgment therefor. If the action had proceeded and had been determined by the city court in accordance with the then issue posed by the complaint and the relief demanded therein, then there could be no doubt that the proceeding for the violation of the ordinance would have been clearly a "civil" action.

However, the appellant in this case was brought into court on said complaint alleging and praying for $300.00 damages to the appellee city and, after trial on that issue, was confronted with a judgment depriving him of his personal liberty for a period of thirty (30) days. Under the statute, Sec. 4-2403, Burns' 1946 Replacement, the court was empowered to and could have imposed imprisonment of appellant for a period of six (6) months in the "county jail" or "work-house." The expanse of such an authorized deprivation of personal liberty without any formal charge of commission of an illegal act, in my opinion, cannot be countenanced upon the theory that is is justified because the action is a "civil" action instituted for the breach of an ordinance. The atrociousness of such a holding is at once apparent when it is observed that a citizen who has done no more than violate a city ordinance is denied the right to the legal protection usually accorded an accused offender and can be tried without formal charge and sentenced to imprisonment up to a period of six months, while those charged with such major offenses as Reckless Homicide (Sec. 47-2001(a), Burns' 1952 Replacement), Driving While

under the influence of intoxicating liquor—first offense —(Sec. 47-2001(b), Burns' 1952 Replacement), Sale of Narcotics (Sec. 10-3502, Burns' 1956 Replacement), Assault (Sec. 10-402, Burns' 1956 Replacement), Assault & Battery (Sec. 10-403, Burns' 1956 Replacement), Seduction (Sec. 10-4208, Burns' 1956 Replacement), Procuring for and conducting House of Assignation (Sec. 10-4218, Burns' 1956 Replacement), Bigamy (Sec. 10-4204, Burns' 1956 Replacement), Burglary with intent to commit a misdemeanor (Sec. 10-701(c), Burns' 1956 Replacement), and Contributing to the delinquency of a child (Sec. 10-812, Burns' 1956 Replacement), all providing for approximately the same or less period of imprisonment, are accorded every legal right and protection, including that of a presumption of innocence until proven guilty.

It seems to me, that the proceedings against appellant, as commenced, were civil, but that when the city court, upon a complaint for damages, proceeded to enter against appellant an initial judgment of imprisonment, the whole action took on the character and nature of a criminal proceeding and, thereby, under the last proviso in Sec. 4-2702, Burns' 1946 Replacement, appellant was authorized to appeal his conviction "in the same manner as provided by law for appeals from justices of the peace", as prescribed in Sec. 4-2403, Burns' 1946 Replacement.

While time limitations and lack of any law clerk assistance prevent a full and thorough consideration of this important question (important because it potentially involves the personal liberty of Indiana citizens who may commit a minor infraction of some city ordinance), I am convinced that there is no Indiana authority sanctioning the possible imprisonment of an otherwise law abiding citizen of this State,

for a period up to six months, for the simple violation of a city ordinance, without any specific charge of crime or misdemeanor being laid against him and without benefit to him of the constitutional and legislative safeguards of personal liberty, the rule of reasonable doubt, the supporting applicable rules of evidence in criminal cases, and protection against double jeopardy. All these matters are not directly involved in appellant's case, but their consideration is necessary in order to determine whether appellant correctly perfected his appeal as from a criminal proceeding.

Having determined that, in my opinion, appellant was authorized to appeal under the provisions of the last proviso in Sec. 4-2702, Burns' 1946 Replacement, and as prescribed in Sec. 4-2403, Burns' 1946 Replacement, the inquiry naturally arises as to whether appellant took his appeal to a court of competent jurisdiction to entertain the same.

It has now been settled in Indiana that appeals of criminal cases from a Magistrates Court in Marion County must be taken to the Criminal Court and not to the Circuit Court. See *State ex rel. Bartley* v. *The Marion Circuit Court of Marion County et al.* (1956), 235 Ind. 226, 132 N. E. 2d 703, 707. The various determinative statutes referred to in the opinion in that case, viz.: Sec. 4-2304, Burns' 1946 Replacement, and Sec. 9-721, Burns' 1956 Replacement, also are determinative of the question now at hand. Under said statutes appeals in criminal cases from city courts in Lake County must be taken to the Lake Criminal Court and not to the Lake Circuit Court.

It follows, in my opinion, that although appellant was authorized to appeal his conviction and jail sentence as from a criminal prosecution, as provided for in the last proviso of Sec. 4-2702, Burns' 1946 Replace-

ment, and "in the same manner as provided by law for appeals from justices of the peace," Sec. 4-2403, Burns' 1946 Replacement, yet such appeal was attempted to be perfected in a court having no jurisdiction competent to entertain the same. His appeal from that part of the judgment imposing imprisonment upon him should have been taken to the Criminal Court and not to the Circuit Court. *State ex rel. Bartley* v. *The Marion Circuit Court, supra.*

No statute or legal authority has been called to our attention requiring the Circuit Court on its own motion to transfer such appeals to the Criminal Court. Secs. 4-2305 and 4-2306, Burns' 1946 Replacement, do not so provide. The record discloses no motion or request by appellant for such a transfer. Any such question of transfer or right of transfer of such appeals is not present in this case and what has been above stated in this regard must not be interpreted as lending any support to any theory that the Circuit Court should or could have ordered appellant's appeal transferred to the Criminal Court. It is adverted to only because inquiring minds may conjecture thereon.

It is my opinion that the Lake Circuit Court committed no error in dismissing appellant's attempted appeal for the reason, first, that viewed as an appeal of a civil action, as the main opinion holds, it was not perfected in accordance with the requirements of Sec. 4-2403, Burns' 1946 Replacement; and, second, viewed as an appeal from what was in effect a criminal prosecution, the theory adopted by me, it was not taken into the proper court with competent jurisdiction. I, therefore, concur in the result of main opinion.

CONCURRING OPINION.

COOPER, J., joins in this concurring opinion, with

the additional observation that in his opinion the judgment of the East Chicago City Court did not conform to the pleadings in that the relief sought by appellee's complaint was for damages and the judgment rendered was criminal and penal; that the criminal or penal jurisdiction of said court can only be invoked by the filing of a proper legal affidavit or information charging the violation of a statute; that by the penal penalty portion of Sec. 4-2403, Burns' 1946 Replacement, the Legislature intended that the City Court's penal jurisdiction should relate to misdemeanors as defined by statute and that any attempt by the Legislature to permit a city court to adjudge imprisonment in any cause which our Supreme Court has designated as a civil action would be unconstitutional as a direct violation of Article 1, Sec. 37 of the Indiana Constitution and the 13th Amendment to the Constitution of the United States; and that since the record conclusively shows that the said City Court, instead of adjudging a monetary penalty within the jurisdictional limits in a cause designated by our Supreme Court as "civil", went beyond his jurisdiction in assessing imprisonment of appellant and, in so doing, denied appellant "due process of law" under Article 1, Sec. 12, of the State Constitution, and Sec. 1 of the 14th Amendment of the United States Constitution, and, therefore, said judgment was illegal and void.

NOTE.—Reported in 154 N. E. 2d 58.